UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.: 08-117 (DWF/RLE)

UNITED STATES OF AMERICA,        )
                                 )
              Plaintiff,         )
                                 )    GOVERNMENT'S OMNIBUS
         v.                      )    RESPONSE TO DEFENDANT'S
                                 )    PRETRIAL MOTIONS
BRADLEY WILFORD SENOGLES,        )
                                 )
              Defendant.         )

The United States of America, by and through its attorneys Frank J. Magill, Jr., Acting United States Attorney for the District of Minnesota, and Kimberly A. Svendsen, Assistant United States Attorney, hereby submits its response to defendant Bradley Wilford Senogles's various pretrial motions.

## 1.  Document #s 21 and 22: Defendant's Motion to Dismiss Indictment

The defendant has filed a motion to dismiss the indictment based upon a host of constitutional arguments.  For purposes of a motion to dismiss, the Court should accept the allegations of the indictment as true.  See United States v. Najarian, 915 F. Supp. 1460, 1463 n.3 (D. Minn. 1996) (citing, inter alia, United States v. Sampson, 371 U.S. 75, 78-79 (1962)); United States v. Ferro, 252 F.3d 964, 968 (8th Cir. 2001).  The government will address each of the defendant's constitutional arguments in turn.  Because each of these arguments lacks merit, the defendant's motion to dismiss should be denied.

### a.  Relevant Statutes

Title 18, United States Code, Section 2250(a) provides as follows:

Whoever –

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

In turn, the Sex Offender Registration and Notification Act ("SORNA") defines "sex offender" as "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). SORNA also sets forth requirements for sex offender registration as follows:

(a) In general

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register –

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

2

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have th authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply

Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913.

**b.    The Indictment Is Not Unconstitutionally Vague.**

The defendant was charged in a one-count indictment with failure to register as a sex offender pursuant to Title 18, United States Code, Section 2250(a). The Indictment states as follows:

From in or about July 2007 to on or about March 14, 2008, in the State and District of Minnesota, the defendant, Bradley Wilford Senogles, being required to register under the Sex Offender Registration and Notification Act, being a sex offender by reason of a conviction under Federal law, and having entered, left and resided in Indian country, did knowingly fail to update a registration as required by the Sex Offender Registration and Notification Act, all in violation of Title 18, United States Code, Section 2250(a).

3

(Doc. No. 12, Indictment at 1.)   The Indictment also cites Title 42, United States Code, Sections 16911 and 16913, which provide the definition of "sex offender" and the requirements for sex offender registration under SORNA.   (Id.)

"'[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Morris, 18 F.3d 562, 568 (8th Cir. 1994) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).   "An indictment normally will be deemed sufficient 'unless no reasonable construction can be said to charge the offense.'" Id. (quoting United States v. Peterson, 867 F.2d 1110, 1114 (8th Cir. 1989)).

In this case, the defendant's conduct meets the elements of failure to register under either § 2250(a)(2)(A) or § 2250(a)(2)(B).   First, the defendant is a sex offender by reason of a conviction under Federal law pursuant to § 2250(a)(2)(A).   The Complaint affidavit, as well as the discovery materials provided to the defendant, indicate that the defendant was convicted in October 2001 of sexual abuse of a minor in the United States District Court for the District of Minnesota.   (See Doc. No. 1 at ¶ 11.)   The defendant's vagueness argument does not concern the "conviction under Federal law" prong of § 2250(a) which would, standing alone, be sufficient to convict the defendant of failure to register.

Second, the defendant entered or left, or resided in, Indian

4

country pursuant to § 2250(a)(2)(B). The defendant argues that the indictment is insufficient pursuant to Federal Rule of Criminal Procedure 7(c)(1) because it fails to specify the particular dates upon which the defendant entered, left or resided in Indian country while failing to register or update his sex offender registration. In United States v. Ambert, the Northern District of Florida considered an identical claim that an indictment under SORNA was insufficient because it failed to specify particular travel dates. 2007 WL 2949476, at *3 (N.D. Fla. Oct. 10, 2007). In Ambert, the indictment alleged that the defendant had violated § 2250(a) "in or about December 2006, through and including on or about July 11, 2007." Id. The court held that the indictment was sufficient because "the indictment properly state[d] the elements of the offense and a time period in which the offense occurred." Id. See also United States v. Youngman, 481 F.3d 1015, 1019 (8th Cir. 2007) (affirming conviction where government alleged assault took place on or about a 27-month period, and stating that "[t]he use of on or about in an indictment relieves the government of proving that the crime charged occurred on a specific date so long as it occurred within a reasonable time of the date specified").

Other courts to consider the issue of specificity of an indictment under § 2250(a) where the government has not alleged particular travel dates have found the indictment sufficient. See United States v. Craft, 2008 WL 1882904, at *2, *16 (D. Neb. Apr. 23, 2008) (holding indictment sufficient where it charged violation of § 2250(a) "[f]rom on or about September 1, 2007, and continuing

until on or about November 28, 2007"); United States v. Cardenas, 2007 WL 4245913, at *1, *13 (S.D. Fla. Nov. 29, 2007) (holding indictment sufficient where it charged violation of § 2250(a) "in and around February 2007" because the "indictment track[ed] the wording of the statute, cite[d] to the statute, and contain[ed] all elements of the crime").   Cf. United States v. Templeton, 2007 WL 445481, at *3 (W.D. Okla. Feb. 7, 2007) (holding indictment sufficient where it "fail[ed] to specify which subsection of SORNA defendant's conviction allegedly meets").

The indictment in this case tracks the language of the charging statute, cites to the statute, and contains all three elements of the crime.   Thus, the indictment is not unconstitutionally vague, and the defendant's motion to dismiss on this ground should be denied.

### c.   Defendant's Commerce Clause Argument Fails.

The defendant challenges the constitutionality of § 2250 on the basis that it is based upon SORNA's sex offender registration requirements, and alleges that those requirements are invalid under the Commerce Clause contained in Article I, Section 8, Clause 3 of the United States Constitution.   "There is a presumption that SORNA and § 2250(a) were validly enacted pursuant to Congress' authority under the Commerce Clause." Craft, 2008 WL 1882904, at *11 (citing United States v. Morrison, 529 U.S. 598, 607 (2000)).   Before the Court may invalidate the statute, "it is incumbent upon the defendant to make 'a plain showing that Congress has exceeded its constitutional bounds.'" Id. at *10 (quoting Morrison, 529 U.S. at

607).  Because the defendant cannot make such a plain showing, his motion to dismiss on Commerce Clause grounds should be denied.

> **i.  Section 2250 is a proper exercise of Congressional authority under the Commerce Clause and the Indian Commerce Clause.**

The defendant argues that Congress did not have the power to enact § 2250 under the Commerce Clause.  With the exception of a single recent district court decision, every district court to consider the issue of the constitutionality of § 2250 under the Commerce Clause has rejected the defendant's Commerce Clause arguments.  See Craft, 2008 WL 1882904, at *20 (collecting cases).

The Supreme Court uses a three-pronged test to analyze Congress' Commerce Clause power, pursuant to which Congress can regulate (1) channels of interstate commerce, (2) instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities, and (3) activities that substantially affect interstate commerce.  United States v. Lopez, 514 U.S. 549, 558-59 (1995).  Under the third prong, only a rational basis is required to determine that the activity regulated substantially affects interstate commerce.  Gonzales v. Raich, 545 U.S. 1, 22 (2005).

Section 2250 is constitutional pursuant to the second Lopez prong.  "The express language of SORNA dictates that violations under SORNA, for failing to register, require either that the person is convicted of a violation of a federal law or, if otherwise required to register under SORNA, travel in interstate or foreign commerce."  United States v. Elliott, 2007 WL 4365599, at

*3 (S.D. Fla. Dec. 13, 2007).  "In this sense, SORNA is very similar to those cases involving a felon in possession of a firearm in violation of Title 18, U.S.C. § 922(g)."  Id.[1]

Section 2250 is also constitutional pursuant to the third Lopez prong.  Where, as here, "Congress has established a jurisdictional predicate of interstate or foreign travel," the law "requires only a de minimus effect on interstate commerce." United States v. Akers, 2008 WL 914493, at * 3 (N.D. Ind. Apr. 3, 2008). Section 2250 "has at least a de minimus effect on interstate travel, because it involves the travel of certain persons across state lines."  United States v. Hinen, 487 F. Supp. 2d 747, 758 (W.D. Vir. 2007).

In addition, to the extent that § 2250 criminalizes failure to register for sex offenders who enter, leave or reside in Indian county, this is a proper exercise of Congress' Indian Commerce Clause authority.  See United States v. Hacker, 2008 WL 312689, at *6 (D. Neb. Feb. 1, 2008) (upholding constitutionality of § 2250 in part because "Congress has the inherent power to legislate matters relating to Indian matters") (citing United States v. Lara, 541 U.S. 193, 200 (2004) (stating that "the Constitution grants

---

[1]See also United States v. Thomas, 534 F. Supp. 2d 912, 918 (N.D. Iowa 2008) ("Section 2250 falls squarely within the second Lopez category."); United States v. Gould, 526 F. Supp. 2d 538, 547 (D. Md. 2007) (upholding constitutionality of § 2250 under second prong of Lopez and stating that "[u]nlike the statutes in Lopez and Morrison, § 2250(a)(2)(B) focuses on the regulation of persons in interstate travel"); United States v. Mason, 510 F. Supp. 2d 923, 932 (M.D. Fla. 2007) (holding that § 2250(a) "is constitutional on its face because it falls within the second category set forth in Lopez").

Congress broad general powers to legislate in respect to Indian tribes, powers that [the Court has] consistently described as 'plenary and exclusive'")).[2]  Thus, § 2250 is a proper exercise of Congress' authority under either the Commerce Clause or the Indian Commerce Clause.

### ii.  Congress has the authority to require sex offenders to register under the Commerce Clause.

The defendant appears to recognize that § 2250, standing alone, would constitute a valid exercise of Congress' Commerce Clause power, (see Doc. No. 22, Motion to Dismiss at 9), but argues that SORNA's sex offender registration provisions are unconstitutional because they "contain no such jurisdictional hook."  Because SORNA's sex offender registration provisions are valid under the third Lopez prong, the defendant's argument must fail.

Several district courts have properly held that Congress had the power to enact sex offender registration requirements under SORNA pursuant to its Commerce Clause power.  These courts have found that "a rational basis exists for concluding that the activity regulated by SORNA substantially affects interstate commerce" under the third prong of Lopez.  See, e.g., United States v. Holt, 2008 WL 1776495, at *3 (S.D. Iowa Apr. 14, 2008).

"In its passage of SORNA, Congress clearly attempted to

---

[2]The defendant's argument that Congress did not require Indian tribes themselves to impose a criminal penalty on sex offenders who fail to register in 42 U.S.C. § 16913(e) does nothing to further the defendant's argument that Congress did not have the power to impose a federal criminal penalty for failure to register on sex offenders who enter, leave or reside in Indian country.

provide an improved system for tracking the interstate movements of sex offenders." United States v. Howell, 2008 WL 313200, at * 8 (N.D. Iowa, Feb. 1, 2008). Indeed, "[t]he ability to track sex offenders as they move from state to state, and continue to identify these sex offenders in their new residences, is enough to fall under the veil of the Commerce Clause." United States v. Madera, 474 F. Supp. 2d 1257, 1265 (M.D. Fla. 2007). See also Hacker, 2008 WL 312689, at *6 (stating that "the purpose of SORNA to track sex offenders from one jurisdiction to another and create a comprehensive national offender registry constitutes a rational basis to conclude that failing to register in a local jurisdiction substantially affects interstate commerce"). Thus, SORNA's sex offender registration provisions constitute a valid exercise of Congress' Commerce Clause power.[3]

### iii. Congress has the authority to require sex offenders to register under the Necessary and Proper Clause.

Alternatively, at least one district court within the Eighth Circuit has held that § 16913, which contains SORNA's sex offender registration requirements, was validly enacted under the Necessary and Proper Clause. United States v. Thomas, 534 F. Supp. 2d 912, 921-22 (N.D. Iowa 2008). "When used as a corollary to the Commerce Clause, the Necessary and Proper Clause provides that, '[w]here

---

[3]In addition, the fact that the defendant's indictment rests on a prior conviction under federal law "does not mean that registration and the maintenance of offender databases do not affect interstate commerce." United States v. Gould, 526 F. Supp. 2d 538, 547 (D. Md. 2007).

necessary to make a regulation of interstate commerce effective, Congress may regulate even those intrastate activities that do not themselves substantially affect interstate commerce.'" Id. at 921 (quoting Gonzales v. Raich, 545 U.S. 1, 35 (2005) (Scalia, J., concurring)). "Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce." Id. (quoting Gonzales, 545 U.S. at 37.) "The relevant question is simply whether the means chosen are 'reasonably adapted' to the attainment of a legitimate end under the commerce power." Id. (citing Gonzales, 545 U.S. at 37.)

Thus, in Thomas, the court held that § 16913 "is an appropriate and reasonably adapted means by Congress to attain the legitimate end of § 2250, i.e., monitoring sex offenders who cross state lines." Id. The court concluded that § 16913 "represents a reasonable, good-faith effort on the part of Congress to monitor sex offenders who cross state lines," so "Congress had the authority to enact § 16913 and make it applicable to § 2250." Id. at 922.

### iv.   United States v. Powers

In a recent case, one court in the Middle District of Florida held that § 2250 is unconstitutional because SORNA's sex offender registration requirements are unconstitutional under the Commerce Clause. United States v. Powers, 2008 WL 1757721 (M.D. Fla. Apr. 18, 2008). This is the only opinion in which any court has held that § 2250 is unconstitutional under the Commerce Clause. The

11

Court should decline to follow <u>Powers</u> for several reasons.

First, although the <u>Powers</u> court recognized that § 2250(a) contains a "jurisdictional element," the court failed to recognize that in such situations, the test is only whether the statute has a de minimus effect on interstate commerce. <u>Powers</u>, 2008 WL 1757721, at *4. Second, the court failed to recognize that SORNA's sex offender registration requirements were enacted in order to track sex offenders as they move from state to state and prevent such sex offenders from slipping through the cracks as they move between the states. Third, the Court failed to engage in any analysis of whether SORNA's sex offender registration requirements were properly enacted under the Necessary and Proper Clause.

Thus, the Court should follow the vast weight of nationwide authority and find that both § 2250 and SORNA's sex offender registration provisions are constitutional under the Commerce Clause. Because the sex offender registration provisions of SORNA were validly enacted pursuant to either Congress' Commerce Clause power or the Necessary and Proper Clause, the defendant's argument that § 2250 is invalid because it is based upon those sex offender registration provisions must fail.

### d.   <u>Section 2250 Does Not Create an Unconstitutional Burden on the Right to Travel.</u>

The defendant argues that § 2250 unconstitutionally burdens the right to travel. The United States is not aware of any court that has so held. <u>See</u>, <u>e.g.</u>, <u>Cardenas</u>, 2007 WL 4245913; <u>United States v. Pitts</u>, 2007 WL 3353423 (M.D. La. Nov. 7, 2007); <u>Ambert</u>, 2007 WL 2949476; <u>United States v. Gonzales</u>, 2007 WL 2298004 (N.D.

12

Fla. Aug. 9, 2007).

"[T]he right to travel protects a person's right to enter and leave another state, the right to be treated fairly when temporarily present in another state, and the right to be treated the same as other citizens of that state when moving there permanently." Gonzales, 2007 WL 2298004, at *8 (citing Saenz v. Roe, 526 U.S. 489, 500 (1999)).   "Mere burdens on a person's ability to travel from state to state, however, are not necessarily a violation of that person's constitutional right to travel." Pitts, 2007 WL 3353423, at * 9.

Like the defendant in Gonzales, the defendant does not argue that he was treated differently because he was a new or temporary resident of any particular state or that he was "not allowed to enter and leave another state." Gonzales, 2007 WL 2298004, at *8. Rather, he argues "that it is inconvenient to travel from [his] permanent residence because the Sex Offender Act requires [him] to notify [state] law enforcement when [he] change[s] permanent or temporary residences." Id.  The court in Gonzales held that this did not amount to an unconstitutional burden on travel, "especially in light of the reasoning behind such registration." Id.  "The state has a strong interest in preventing future sexual offenses and alerting local law enforcement and citizens to the whereabouts of those that could reoffend." Id.

Moreover, the defendant's hypothetical example of the sex offender who is required to register four times while paddling down the Minnesota River misapplies § 2250.  The statute applies to a

13

sex offender who enters, leaves or resides in Indian country only if he knowingly fails to register or update a registration as required by SORNA. See 18 U.S.C. § 2250(a)(3). Thus, a sex offender can paddle freely through the state, or to and from other states, as long as he keeps his registration current. Keeping the registration current will not be a "full-time occupation," as SORNA requires a sex offender to update his registration only upon changing his name, residence, employment, or student status. 42 U.S.C. § 16913(c). Thus, the defendant's motion to dismiss based on the right to travel should be denied.

### e.   Congress Did Not Improperly Delegate Its Authority with Respect to SORNA.

Title 42, United States Code, section 16913(d) provides as follows:

> The Attorney General shall have th authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

The defendant argues that SORNA is unconstitutional because Congress impermissibly delegated authority to determine whether the Act would apply retroactively to sex offenders convicted prior to July 27, 2006. The United States is unaware of any court that has so held. Instead, a host of district courts nationwide have rejected this argument, including several within the Eighth Circuit. See, e.g., Howell, 2008 WL 313200, at *7 (collecting cases); Hacker, 2008 WL 312689; United States v. Lovejoy, 516 F. Supp. 2d 1032 (D. N.D. 2007); United States v. May, 2007 WL 2790388

(S.D. Iowa Sept. 24, 2007).

"The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." Mistretta v. United States, 488 U.S. 361, 371 (1989). However, this doctrine does not "prevent Congress from obtaining the assistance of its coordinate Branches." Id. "If Congress lays down in the legislative act 'an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" May, 2007 WL 2790388, at *5 (quoting Mistretta, 488 U.S. at 371).

"With respect to SORNA, Congress clearly set forth its purpose in 42 U.S.C. § 16901, namely to establish a comprehensive national registry of sex offenders for the protection of the public." Howell, 2008 WL 313200, at *7. "Moreover, the authority granted to the Attorney General in 42 U.S.C. § 16913(d) is circumscribed to a prescribed set of circumstances concerning the retroactive applicability of SORNA's registration requirements." Id.

The defendant's only authority for the proposition that § 16913(d) constitutes an impermissible delegation of legislative authority are the only two cases in which the Supreme Court has struck down such a delegation, both decided in 1935. See A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935); Panama Refining Co. v. Ryan, 293 U.S. 388 (1935). Thus, in United States v. Mason, the court upheld the constitutionality of SORNA and "decline[d] to disagree with over seventy years of case law

upholding congressional delegations of legislative authority based on such limited support, especially when the law in question serves such a detailed and clearly delineated legislative purpose." 510 F. Supp. 2d 923, 928 (M.D. Fla. 2007). "After all, if Congress can delegate to another branch of government the authority to create a body of federal sentencing guidelines governing sentencing for all federal crimes, it can surely delegate the more modest issue of establishing an effective date for a sex offender registration statute." United States v. Gill, 520 F. Supp. 2d 1341, 1349 (D. Utah 2007). Thus, the Court should deny the defendant's motion to dismiss based on improper delegation of legislative authority.[4]

**f.   The Attorney General's Interim Order Was Promulgated in Compliance with the Administrative Procedures Act.**

The defendant argues that the Attorney General's Interim Order, codified at 28 C.F.R. § 72.3, which provides that "[t]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to enactment of that Act," was issued in violation of the Administrative Procedures Act because no public notice period was provided. The United States is unaware of any court that has so held. Instead, every district court to consider the

---

[4]In at least two cases, district courts have held that where, as here, the defendant was able to register as a sex offender upon completing his term of imprisonment under § 16913(b), the defendant lacks standing to raise the issue of nondelegation because such a defendant "has not been charged under rules promulgated by the Attorney General; rather, [he] has been charged by Congress and its legislative mandate codified in § 2250." See United States v. Gonzales, 2007 WL 2298004, at *12 (N.D. Fla. Aug. 9, 2007); United States v. Cardenas, 2007 WL 4245913, at *9 (S.D. Fla. Nov. 29, 2007).

issue has held that the Attorney General's Interim Order was
promulgated in compliance with the Administrative Procedures Act.
See, e.g., United States v. Utesch, 2008 WL 656066 (E.D. Tenn.
March 6, 2008); United States v. Dixon, 2007 WL 4553720 (N.D. Ind.
Dec. 18, 2007); United States v. Gould, 526 F. Supp. 2d 538 (D. Md.
2007); Pitts, 2007 WL 3353423.

The Administrative Procedures Act "requires advance public
notice for proposed rules and publication before the rule's
effective date unless 'good cause' is established." Gould, 526 F.
Supp. 2d at 546 (citing 5 U.S.C. § 553(b)(3)(B), (d)(3) (2000)).
"Good cause exists when public notice and comment procedures are
'impracticable, unnecessary, or contrary to the public interest.'"
Id. (citing 5 U.S.C. § 553(b)(3)(B)).

The Attorney General's Interim Order in this case "specified
that the rule would become immediately effective because prior
public notice would be contrary to the public interest." Id.
(citing 72 Fed. Reg. at 8897). "The DOJ justification for
immediate implementation was a need for legal certainty about
SORNA's retroactive application to pre-SORNA convicted offenders
and a concern for public safety that these offenders be registered
as quickly as possible." Id. (citing 72 Fed. Reg. at 8896.) "The
DOJ's valid concern for public safety, legal certainty, and swift
implementation of the rule was adequately justified in its interim
order." Id. "Moreover, DOJ has since issued proposed guidelines
that are open to the formal public notice and comment review
period." Id. Because the Attorney General demonstrated good cause

17

for failing to comply with the Administrative Procedures Act, the Court should deny the defendant's motion to dismiss on this ground.

### g.    SORNA Does Not Violate the Ex Post Facto Clause.

The defendant's argument that "[t]he crime alleged in the Indictment purports to punish [the defendant] for acts committed prior to the passage of the Adam Walsh Act" misapprehends the purpose of § 2250.  The Indictment charges the defendant with failing to register and update his sex offender registration, conduct which occurred between July 2007 and March 14, 2008, well after SORNA was enacted on July 27, 2006, and well after the February 28, 2007 promulgation of the Attorney General's interim rule making SORNA applicable to individuals whose underlying sex offenses predate SORNA.  The indictment does not purport to charge the defendant with committing an underlying sex offense in 2001.  Thus, the defendant's Ex Post Facto Clause claim must fail.[5]

"For a criminal or penal statute to be ex post facto, 'two critical elements must be present . . . : it must be retrospective, that is, it must apply to events occurring before its enactment,

---

[5]The defendant does not appear to argue that SORNA's sex offender registration requirement, codified at 42 U.S.C. § 16913, violates the Ex Post Facto Clause.  (See Doc. No. 22, Motion to Dismiss at 17-19.)  Rather, the defendant's argument focuses on whether criminal prosecution of the defendant under § 2250 violates the Ex Post Facto Clause.  The great weight of authority throughout the various district courts to consider the issue, as well as the Supreme Court's decision in Smith v. Doe, 538 U.S. 84 (2003), stands for the proposition that SORNA's sex offender registration requirement does not violate the Ex Post Facto clause.  Should the defendant take the position at the motions hearing that the sex offender registration requirement itself constitutes a violation of the Ex Post Facto Clause, the government requests the opportunity to submit further briefing on the issue.

and it must disadvantage the offender affected by it." United States v. Utesch, 2008 WL 656066, at *6 (E.D. Tenn. Mar. 6, 2008) (quoting Weaver v. Graham, 450 U.S. 24, 30 (1981)). "'A law is retrospective if it changes the legal consequences of acts completed before its effective date.'" Id. (quoting Miller v. Florida, 482 U.S. 423, 430 (1987)).

"The offense established by Section 2250 is a post-enactment failure to comply with SORNA's registration requirements." United States v. Villagomez, 2008 WL 918639, at *3 (W.D. Okla. Apr. 2, 2008). "Here, the offense with which [the defendant] is charged - a failure to update a [Minnesota] registration between [July 2007 and March 2008] - occurred after SORNA took effect and after the Attorney General declared its applicability to sex offenders convicted before its enactment, as authorized by Congress." Id. "Thus, no ex post facto violation arises from applying Section 2250 to [the defendant's] alleged conduct." Id. See also United States v. LeTourneau, 534 F. Supp. 2d 718, 722 (S.D. Tex. 2008) ("SORNA does not punish a defendant for the sexual offense committed prior to the enactment of SORNA, but rather traveling in interstate commerce and failing to register after SORNA became effective."); United States v. Bartlett, 2008 WL 440828, at *2 (same, collecting cases).

The cases in which district courts have found that prosecutions for failure to register under § 2250 would violate the Ex Post Facto Clause are distinguishable, as they concern situations in which defendants were being prosecuted for failures

19

to register that occurred prior to the February 28, 2007 promulgation of the Attorney General's interim rule. See, e.g., United States v. Gillette, 2008 WL 943265 (D. Virgin Islands Apr. 7, 2008) (defendant traveled in interstate commerce and failed to register in 2003). Thus, the defendant's motion to dismiss on this ground should be denied.[6]

### h. **SORNA Does Not Violate the Defendant's Right to Procedural or Substantive Due Process.**

#### i. **Defendant has no Due Process right to a hearing to assess risk of recidivism or current dangerousness before being required to register as a sex offender.**

The defendant argues that SORNA violates the Due Process Clause because it requires sex offender registration without a hearing to assess risk of recidivism or current dangerousness of the defendant. The United States is unaware of any court that has so held. Instead, it appears that every district court to consider the issue has rejected this argument. See, e.g., Mason, 510 F. Supp. 2d at 931 (holding that the defendant's "potential for recidivism or current dangerousness are not material to SORNA"); Madera, 474 F. Supp. 2d 1257; Ambert, 2007 WL 2949476; Gonzales, 2007 WL 2298004; Templeton, 2007 WL 445481.

As the defendant acknowledges, the Supreme Court "has expressly held that not offering a sex offender a hearing to determine his current dangerousness prior to his name being

_____

[6]Because application of § 2250 to this defendant does not violate the Ex Post Facto Clause in any event, the Court need not reach the issue of whether § 2250 is a civil regulatory statute or a punitive statute.

published in a sex offender registry is not a violation of procedural due process." Templeton, 2007 WL 445481, at *5 (citing Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1, 4-8 (2003)). In addition, the Eighth Circuit has held that substantive due process concerns do not invalidate sex offender registration statutes. Gunderson v. Hvass, 339 F.3d 639, 643 (8th Cir. 2003). Thus, the Court should deny the defendant's motion to dismiss on this ground.

### ii. Defendant was provided with proper notice that he was required to register as a sex offender.

The defendant acknowledges that after his release from custody following his conviction for sexual abuse of a minor, he "acknowledged his duty to register [as a sex offender] 'in accordance with Minnesota Statute 243.166.'" (Doc. No. 22, Motion to Dismiss at 2 (quoting Doc. No. 1, ¶ 9).) However, the defendant argues that although he was notified of his duty to register as a sex offender pursuant to Minnesota state law, the Indictment in this case violates the Due Process Clause because he was not specifically notified that SORNA also requires him to register. This argument lacks merit.

"Several courts have determined that actual notice of SORNA's registration requirements is not required even for conduct that occurred prior to the promulgation of the rule." Lovejoy, 516 F. Supp. 2d at 1037 (collecting cases). The defendant "had sufficient notice that failing to register as a sex offender was illegal." Id. "Ignorance of a new, independent obligation under federal law (SORNA) to register as a sex offender is simply no excuse." Id. at 1038; see also Holt, 2008 WL 1776495, at *2 (holding defendant's

21

"knowledge   of   state   registration   requirements   constitutes
sufficient notice that failure to register as a sex offender was
illegal").

The defendant relies upon Lambert v. California, 355 U.S. 225
(1958), for the proposition that notice is essential when "'wholly
passive'   conduct   such   as   the   'mere   failure   to   register'   is
criminalized."   (Doc. No. 22, Motion to Dismiss at 23.)   However,
Lambert only "carves out a very limited exception to the general
rule that ignorance of the law is not excuse."   United States v.
Hutzell, 217 F.3d 966, 968 (8th Cir. 2000).   "The exception applies
when   1)   the   defendant's   conduct   was   'wholly   passive,'   2)   the
defendant was 'unaware of any wrongdoing' (i.e., the defendant was
'entirely innocent'), and 3) there is an absence of 'circumstances
that should alert the doer to the consequences of his deed' - or,
more specifically, an absence of circumstances that 'move [him] to
inquire as to the necessity of registration.'"   Craft, 2008 WL
1882904, at *5 (citing Lambert, 355 U.S. at 228-29).

"Lambert is inapplicable to this case," because the defendant
was   "well   aware   of   his   duty   to   update   his   registration"   in
Minnesota.   Gould, 526 F. Supp. 2d at 544; see also LeTourneau, 534
F. Supp. at 723 ("Lambert is inapplicable to the vast majority of
cases under SORNA . . .").   Indeed, the facts that the defendant
was informed of his duties under Minnesota law at the time of his
release from custody, has registered in Minnesota prior to becoming
non-compliant,   and   has   returned   address   verification   forms   in
compliance with Minnesota law prior to becoming non-compliant, (see

Doc. No. 1, Complaint at ¶¶ 9-10), illustrates that the defendant was well aware of his duty to register and update his registration in Minnesota. In addition, "it should not surprise anyone that the government has enacted legislation that makes the failure to register as a sex offender a federal offense." Craft, 2008 WL 1882904, at *6. Thus, "it cannot be said that the defendant was unaware of any wrongdoing or that his failure to register was 'entirely innocent.'" Id. "Nor can it be said that there was an absence of circumstances that should have alerted the defendant to the consequences of failing to register or moved him to inquire as to the necessity of registration." Id.

    Moreover, although § 2250(a) requires that the defendant "knowingly fail[] to register or update a registration as required by [SORNA]," "[s]pecific notice of the federal registration requirements . . . is not an element of the crime with which [the defendant] is charged." United States v. Pitts, 2008 WL 474244, at *4 (M.D. La. Feb. 14, 2008). Although § 16917 and the SMART Guidelines require that officials give notice of SORNA, they do not make receipt of such notice an element of the criminal offense of failure to register. See United States v. Samuels, 2008 WL 169792, at *4 (E.D. Ky. Jan. 17, 2008). "The fact that [the defendant] was unaware that he was allegedly in violation of SORNA by not registering is not an affirmative defense." Id. "[I]t is not necessary for a defendant to know precisely which statute he is violating in order to be held liable under the law." United States v. Hester, 2008 WL 351677, at *2 (N.D.N.Y. Feb. 7, 2008); see also

United States v. Roberts, 2007 WL 2155750, at *2 (W.D. Va. July 27, 2007) ("Sex offenders . . . must comply with the law even when it changes suddenly and without notice, and they are well advised to periodically check for changes because they are particularly subject to regulation.").

The defendant's reliance on United States v. Barnes, 2007 WL 2119895 (S.D.N.Y. July 23, 2007) and United States v. Smith, 2007 WL 1725329 (S.D. W. Va. June 13, 2007) is misplaced. "The narrow holdings in Barnes and Smith are easily distinguishable from the present case." Lovejoy, 516 F. Supp. 2d at 1036; see also LeTourneau, 534 F. Supp. 2d at 724 (distinguishing Barnes and Smith).

In Barnes, the defendant was arrested on February 28, 2007, the same day "the Attorney General promulgated the interim rule which made the registration requirements of SORNA applicable to individuals who had been convicted of a sex offense before the enactment of the Adam Walsh Act on July 27, 2006." Lovejoy, 516 F. Supp. 2d at 1036 (citing Barnes, 2007 WL 2119895). The court in Barnes made clear that it "base[d] its ruling solely on these limited circumstances where Defendant was arrested on the exact date it became clear that SORNA would be applied to him." Barnes, 2007 WL 2119895, at *6. Similarly, in Smith, "the defendant was arrested prior to the issuance of the Attorney General's interim rule," so the court held that "[w]hen [the defendant] was arrested, he could not have knowingly violated SORNA, as SORNA did not apply to him." Lovejoy, 516 F. Supp. 2d at 1036 (citing Smith, 2007 WL

24

1725329, at *4).

In addition, in United States v. Aldrich, 2008 WL 427483 (D. Neb. Feb. 14, 2008), a district court dismissed an indictment charging a violation of § 2250, in part because of lack of notice. Aldrich is also easily distinguishable from the instant case. In Aldrich, the defendant was charged with failing to register in 2004, 2005 and 2006, before the Attorney General's interim rule was issued. Id. at *1, *4-5; see also Craft, 2008 WL 1882904, at *8 (distinguishing Aldrich, and pointing out that "the great weight of authority on this issue is contrary to Aldrich"). Because the defendant in this case was provided with adequate notice that his failure to register and to update his registration as a sex offender was illegal, and because the defendant's failure to update his registration took place after the promulgation of the Attorney General's interim rule, the defendant's motion to dismiss on the ground of lack of notice should be denied.

### iii. SORNA applies to sex offenders convicted before its implementation in a particular state.

The defendant argues that SORNA is not applicable to him because the Attorney General has not promulgated a regulation making SORNA applicable to sex offenders convicted before SORNA's implementation in a particular state. It appears that only one district court has addressed this issue. See Utesch, 2008 WL 656066. The court in Utesch rejected this argument. Id. at *5. Similarly, the defendant argues that he is unable to comply with SORNA because Minnesota has not yet implemented SORNA. The United States is unaware of any court that has so held. Instead, it

25

appears that every court to consider the issue has rejected this argument.  See, e.g., Gould, 526 F. Supp. 2d 538; Craft, 2008 WL 1882904; Akers, 2008 WL 914493; Hester, 2008 WL 351677; Dixon, 2007 WL 4553720; United States v. Adkins, 2007 WL 4335457 (N.D. Ind. Dec. 7, 2007); Pitts, 2007 WL 3353423; United States v. Beasley, 2007 WL 3489999 (N.D. Ga. Oct. 10, 2007).

"States have until July 27, 2009 to implement SORNA."  Gould, 526 F. Supp. 2d at 542.  "SORNA requires sex offenders to 'register and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.'"  Id. (quoting 42 U.S.C. § 16913(a)).  "An offender's registration under SORNA does not hinge on implementation in his state."  Id.

The defendant cites various differences between Minnesota's sex offender registration requirements and the requirements under SORNA.  (See Doc. No. 22, Motion to Dismiss at 25.)  "Although the obligations imposed under SORNA differ from those under [Minnesota] law, [the defendant] had a duty to register his name and address with the [Minnesota] authorities."  Gould, 526 F. Supp. 2d at 542.  "[Minnesota's] failure to implement SORNA does not preclude [the defendant's] prosecution under § 2250."  Id.  See also Craft, 2008 WL 1882904, at *7 (holding the fact that a state has not implemented SORNA "does not mean that SORNA cannot, in a manner consistent with due process, make the failure to register in accordance with state law a federal offense").  Thus, the defendant's motion to dismiss on this ground should be denied.

### i.   <u>Conclusion</u>

For the reasons set forth above, each of the defendant's constitutional arguments lacks merit.  The government requests that the Court deny the defendant's motion to dismiss the indictment.

### 2.   <u>Document #s 23 and 24: Defendant's Motion to Compel Attorney for the Government to Disclose Evidence Favorable to Defendant</u>

By way of this motion, the defendant seeks a wide variety of discovery, much of which he is in no way entitled to receive.  For example, the defendant asks this Court to order the United States to provide "[t]he name and current whereabouts of any witness to the underlying events of this case whom the government does not anticipate calling as a witness at trial and a copy of any statement made by or summary of an interview with such a witness." (Document # 23 at ¶ 17.)

Similarly, the defendant asks this Court to order the United States to provide "[a]ll information, records and transcripts which in any way indicate or reveal that any prospective government witness, in connection with this or any other case, has provided untruthful, false, misleading, incomplete, or inaccurate information or testimony to: a) Any state or federal law enforcement officer or agency, b) Any state or federal grand jury, c) Any state or federal trial court while testifying at trial and/or any related or preliminary proceeding."  (Document # 23 at ¶ 22.)  In addition, the defendant asks the Court to order the United States to provide "[a]ll office internal affairs, internal investigations, or public integrity files relating to connecting with [sic] any testifying government agent or law enforcement

officer, including but not limited to any and all complaints, any and all disciplinary proceedings, any and all termination reports of actions, including but not limited to the reasons for termination." (Document # 23 at ¶ 32.) The defendant is in no way entitled to such information. This motion should be denied.

More importantly, as to the discovery to which all of the defendants are entitled, the United States has already complied with Rule 16(a)(1)(A)-(F) and has even made discovery not required by law. In addition, the United States is aware of its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1986), <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and their progeny. The United States has complied, and will continue to comply, fully with <u>Brady</u>, <u>Giglio</u>, and their progeny. The United States objects to the defendant's motions to the extent that they go beyond the requirements of <u>Brady</u>, <u>Giglio</u>, and their progeny.

The government also objects to this motion to the extent that it seeks early disclosure of Jencks material. It has been repeatedly and consistently held in this Circuit and District that the United States may not be required to make pretrial disclosure of Jencks material. <u>Finn</u>, 919 F. Supp. at 1315 n.3; <u>see also</u> <u>United States v. White</u>, 750 F.2d 726 (8th Cir. 1984). Accordingly, the United States objects to any court-ordered disclosure of such statements prior to the witnesses' testimony. The United States presently intends to disclose prior statements of its witnesses three calendar days before trial provided that the defendant provides reciprocal Jencks Act disclosures at the same time.

28

3. **Document # 25: Defendant's Pretrial Motion for Rule 16 Discovery**

The United States has already complied with Rule 16(a)(1)(A)-(F) and has even made discovery not required by law.  Further, the government understands its continuing obligations with respect to discovery.

4. **Document # 26: Defendant's Pretrial Motion for Government Agents to Retain Rough Notes**

The United States does not object to requiring the law enforcement officials involved in the investigation of this case to retain and preserve their rough notes.  However, the United States objects to any order concerning the disclosure of rough notes.

Rough notes are not considered statements within the meaning of the Jencks Act, 18 U.S.C. § 3500.  United States v. Redding, 16 F.3d 298, 301 (8th Cir. 1994) (concluding that rough notes are not a statement of witness as there was no evidence witness signed, adopted or approved of notes); United States v. Shyres, 898 F.2d 647, 657 (8th Cir. 1990) (defendant not entitled to discover government agents' general notes from witness interviews).  Nor are agent rough notes generally discoverable as "statements" of the agent.  See United States v. Simtob, 901 F.2d 799, 808-09 (9th Cir. 1990) (defendant not entitled to discover testifying agent's destroyed rough notes of investigation as Jencks Act material when merely represented pieces of information put in writing to refresh memory); United States v. Williams, 875 F.2d 846, 853 (11th Cir. 1989) (defendant not entitled to discover agents' personal notes, contact sheets, witness lists, summaries of non-testifying

witnesses' statements when bulk of material not relevant to subject matter of agents' testimony).

5.  **Document # 27: Defendant's Pretrial Motion to Suppress Evidence Derived from Searches and Seizures**

This motion is moot.  The government has not obtained any evidence from searches and seizures in this case.

6.  **Document # 28: Defendant's Pretrial Motion to Suppress Statements, Admissions and Answers**

The defendant was interviewed by Deputy United States Marshal Matthew Moran at Sherburne County jail on March 26, 2008.  Before being interviewed, the defendant was advised of his <u>Miranda</u> rights. The defendant signed the United States Marshals Service's USM-309 "Waiver of Rights" form, agreed to speak with law enforcement, and proceeded to speak with DUSM Moran.  At the motions hearing, the United States will present a recording of the defendant's statement to DUSM Moran, the defendant's signed waiver of rights form, and the testimony of DUSM Matthew Moran to establish that the defendant was properly advised of his <u>Miranda</u> rights and that he knowingly, intelligently, and voluntarily waived those rights.  As such, the statements the defendant made during this interview are admissible.

7.  **Document #s 29 and 30: Defendant's Pretrial Motion to Disclose and Make Informants Available for Interview**

In addition to the witnesses interviewed by law enforcement in this case whose identities have already been disclosed to defense counsel, two confidential informants provided law enforcement with information regarding the then-current whereabouts of the defendant.  The government objects to disclosure of these two confidential informants.

The law is well settled that the government has a privilege to withhold the disclosure of the identity of its informants. McCray v. Illinois, 386 U.S. 300 (1967). "The defendant bears the burden of demonstrating the need for disclosure and the court must weigh the defendant's right to information against the Government's privilege to withhold the identity of its confidential informants." United States v. Harrington, 951 F.2d 876, 877 (8th Cir. 1991). See also McCray, 386 U.S. at 310; Roviaro v. United States, 353 U.S. 53, 60-61 & 62 (1957). Disclosure should not be ordered unless it is vital to a fair trial. United States v. Disbrow, 768 F.2d 976, 981 (8th Cir. 1985).

The defendant cannot prove facts which establish the materiality of the informants' testimony. "In order to override the Government's privilege of nondisclosure, defendants must establish beyond mere speculation that the informant's testimony will be material to the determination of the case." Harrington, 951 F.2d at 877. "A trial court abuses its discretion if it orders disclosure absent a showing of materiality." Id. at 877; United States v. Grisham, 748 F.2d 460, 463 (8th Cir. 1984). "In cases involving tipsters who merely convey information to the Government but neither witness nor participate in the offense, disclosure is generally not material to the outcome of the case and is therefore not required." Harrington, 951 F.2d at 878; United States v. Bourbon, 819 F.2d 856 (8th Cir. 1987).

In the instant case neither of the two informants will be a witness for the government, and each merely conveyed information to

an agent for the government who furthered the investigation.  A mere tipster is not an informant whose identity must be disclosed. Accordingly, defendant's motion should be denied.

**8.    Document # 31: Defendant's Pretrial Motion for Disclosure of 404(b) Evidence**

The defendant moves for the immediate disclosure of any prior "bad act" or "similar course of conduct" evidence which the United States intends to offer at trial.  The defendant also asks the Court to direct the United States to identify the witnesses through whom such evidence will be presented at trial.

The United States is fully aware of its obligations under Rule 404(b) and intends to fully comply with those obligations.  The issues before the Court on this matter are (1) when disclosures under Rule 404(b) must be made and (2) whether the United States is required to identify the witnesses through whom such evidence will be presented at trial.  Each of these issues is addressed in turn.

With respect to the request for "immediate" disclosure of all 404(b) evidence, Rule 404(b) does not require the immediate disclosure of such evidence.  Although the United States intends to produce all such evidence as soon as practicable, the United States objects to the timing element of this request because it will lead to motions to suppress later discovered 404(b) evidence.  The United States recommends that such disclosures be ordered to be made no later than fourteen days before trial.

The United States objects to the defendant's request for the United States to identify the witnesses through whom any 404(b) evidence will be presented.  During pretrial discovery, the United

States is not required to disclose directly or indirectly the names and addresses of its witnesses under either Federal Rule of Evidence 404(b) or Federal Rule of Criminal Procedure 16.  <u>See</u> <u>Arcoren v. United States</u>, 929 F.2d 1235, 1242 (8th Cir. 1991); Fed. R. Evid. 404(b) advisory committee's notes, 1991 Amendments.

Finally, the United States requests that the order be strictly drawn to require no more than what is encompassed by Rule 404(b). Specifically, Rule 404(b) does not encompass acts which are "intrinsic" to the charged offense.  Fed. R. Evid. 404 advisory committee's notes, 1991 Amendments.  If conduct of the defendant is an "intrinsic" part of the charged offense but could otherwise be considered a "bad act," then Rule 404(b) does not contemplate that notice of such evidence be given.  The distinction is an important one as the defendant may claim that the United States must give notice of every "bad act" it intends to introduce, which is not so. <u>United States v. Adediran</u>, 26 F.3d 61, 63 (8th Cir. 1994) (standards applicable to evidence considered under Rule 404(b) do not apply to such "inextricably intertwined" evidence).

## 9. <u>Document # 32: Defendant's Pretrial Motion for Discovery of Expert under Rule 16(a)(1)(G)</u>

The United States is fully aware of its obligations under Rule 16(a)(1)(G) and intends to comply fully with the requirements of that rule.  The only issue on this matter to be determined by the Court is the timing of such disclosures.

There is no specific timing requirement included in Rule 16(a)(1)(G).  Fed. R. Crim. P. 16 advisory committee's note, 1993 Amendments.  With respect to the issue of timing, the advisory

committee's notes provide that "although no specific timing requirements are included, it is expected that the parties will make their requests and disclosures in a timely fashion." Id.

The United States respectfully requests that the Court order that all expert disclosures be made no later than fourteen days before trial. See United States v. Finn, 919 F. Supp. 1305, 1316 n.7 (D. Minn. 1995) (ordering government to make expert disclosures as opinions became available and no later than seven days before trial). Such a timing requirement allows the parties sufficient notice of the expected testimony and time to prepare a focused cross-examination of the expert. See Fed. R. Crim. P. 16 advisory committee's note, 1993 Amendments.

10. **Document # 33: Defendant's Pretrial Motion for Disclosure of Electronic Evidence**

This motion is moot. The government has not obtained any evidence by means of electronic interception or surveillance in this case.

Respectfully submitted,

Dated: May 12, 2008                    FRANK J. MAGILL, JR.
                                       United States Attorney


                                       s/Kimberly A. Svendsen

                                       BY: KIMBERLY A. SVENDSEN
                                       Assistant U.S. Attorney