UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

        Plaintiff,

vs.

Bradley Wilford Senogles,

        Defendant.        Crim.  08-117 (DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Dismiss Indictment, Motion to Suppress Evidence Derived from Searches and Seizures, and Motion to Suppress Statements, Admissions and Answers.  A Hearing on the Defendant's Motions was conducted on May 13, 2008, at which time, the Defendant appeared personally, and by Mark D. Larsen, Esq., and the Government appeared by Kimberly A. Svendsen, Assistant United States Attorney.

In order to allow the taking of additional testimony, the Hearing on the Defendant's Motion to Suppress Statements, Admissions, and Answers, was continued to May 20, 2008, at which time, the Defendant appeared personally, and by Mark D. Larsen, Esq., and the Government appeared by Michael L. Cheever, Assistant United States Attorney.[1]

For reasons which follow, we recommend that the Defendant's Motion to Dismiss Indictment be denied, that the Defendant's Motion to Suppress Statements, Admissions and Answers, be denied, and that the Defendant's Motion to Suppress Evidence Derived from Searches and Seizures be denied, as moot.

## II.  Factual and Procedural Background

The Defendant is charged with one (1) Count of Failure to Register as a Sex Offender, in violation of Title 18 U.S.C. §2250(a).  The alleged violation is said to have occurred from in or about July of 2007, to on or about March 14, 2008, in this State and District.  According to the Indictment, see, Docket No. 12, the Defendant

---

[1]At the close of the Hearing, the parties requested leave to submit post-Hearing memoranda on the legal issues raised by the Defendants' Motions.  Leave was granted, and therefore, the last submission on the issues was  received on June 13, 2008, at which time, the Motions were taken under advisement.  See, Title 18 U.S.C. §3161(h) (1)(F) and (J); Henderson v. United States, 476 U.S. 321, 330-32 (1986); United States v. Blankenship, 67 F.3d 673, 676-77 (8th Cir. 1995).

is required to register, under the Sex Offender Registration and Notification Act ("SORNA" or the "Act"), as a sex offender, by reason of a conviction under Federal law, and he knowingly failed to update his registration while entering, leaving, and residing, in Indian country, in violation of SORNA. As pertinent to those charges, and to the Motions now before us, the operative facts may be briefly summarized.[2]

At the Motions Hearing, which was held on May 13, 2008, the Defendant offered the testimony of Alisa Goodshield ("Goodshield"), who is the sister of the Defendant. Goodshield testified that she was present at the time of the Defendant's arrest, which occurred on March 26, 2008. According to Goodshield, on the morning of the Defendant's arrest, she had dropped her son off at his school, at 9:40 o'clock a.m., and the school is located approximately one (1) mile from her mother's house. Goodshield then returned to her mother's house, and joined her sister in the kitchen,

---

[2]Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion. Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require. See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991), cert. denied, 505 U.S. 1228 (1992); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

where they visited for approximately five (5) to ten (10) minutes, and were interrupted by police officers knocking on the door. Goodshield admitted that she was not certain of the exact time at which the arresting officers arrived at the house, but that she was confident that it could not have been after 11:00 o'clock a.m.

During the course of that Hearing, the Defendant also called Matthew Moran ("Moran"), who is a Deputy with the United States Marshal Service, as a witness.[3] Moran stated that he was a Sex Offender Investigative Coordinator, who had been assigned to the Defendant's case approximately two (2) to three (3) weeks prior to the Defendant's arrest. Moran was not involved in the Defendant's arrest, but interviewed him at the Sherburne County Jail, at approximately 3:30 o'clock p.m., or 4:00 o'clock p.m., on the day of his arrest. Moran testified that the Defendant was arrested at his mother's house, which is located in Minneapolis, and that the Minneapolis Courthouse

---

[3]Although Moran had originally been asked to attend the Hearing on May 13, 2008, in order to appear as a witness for the Government, before Moran could be called to testify, we granted a continuance of the Hearing, owing to counsels' failure to join the issues to be litigated at the Suppression Hearing, and the Government expressed its intent to wait to call Moran at the continued Hearing on May 20, 2008. The Defendant, however, expressed an intention to hear Moran's initial testimony at the Hearing on May 13, 2008, and consequently, he called Moran as a witness for the defense.

is approximately five (5) to ten (10) miles from the arrest site, and that the Sherburne County Jail is located approximately thirty (30) miles from the arrest site.

According to Moran, on the day of the Defendant's arrest, MaryAnn Laliberte ("Laliberte"), who is a Warrant Clerk with the United States Marshal Service, telephoned the District Court, in an attempt to arrange for the Defendant to initially appear before a Judicial Officer, and was told that the arresting officers should not bring the Defendant to the Courthouse, as he could not be seen by Pretrial Services on that day. Moran added that he was not certain if a hearing before a Magistrate could be held without a Pretrial interview, but he acknowledged that, if the Defendant had been taken before a Magistrate Judge on March 26, 2008, he probably would not have interviewed the Defendant on that date.

At the Hearing on May 20, 2008, the Government recalled Moran as a witness, over the objection of the Defendant that he had previously been excused. Moran testified that, on March 26, 2008, he had been attempting to locate the Defendant in Cass Lake, Minnesota, which is approximately a three (3) hour drive, by car, from Minneapolis. While in Cass Lake, Moran received information that the Defendant was at his mother's house in Minneapolis, and between 10:00 o'clock a.m., and 10:30 o'clock a.m., Moran called Deputy Sean Malecha ("Malecha"), who was located in

Minneapolis, and asked him to attempt the arrest of the Defendant.  While Moran remained in Cass Lake to continue his investigation, Malecha drove to the house of the Defendant's mother, where he arrived at approximately 11:00 o'clock a.m.  Moran testified that Malecha informed him that, after he had located and arrested the Defendant, he remained at the house until approximately 11:30 o'clock a.m., questioning the remaining witnesses on the scene.

In his testimony on May 20, 2008, Moran clarified that, after he learned that Malecha had arrested the Defendant, he spoke with Laliberte, who advised him that Initial Appearances, before a Magistrate Judge in this Court, were scheduled that day for 1:30 o'clock p.m.  According to Moran, the United States Marshal Service has an official policy, which requires that an arrestee be interviewed by Pretrial Services prior to making an Initial Appearance and, if a Pretrial Services interview was not available, then the arrestee would be booked into custody until Pretrial Services can conduct its interview for the Magistrate Judge.  Moran stated that, in order for the Defendant to be interviewed by Pretrial Services on March 26, 2008, he would have to be present at the United States Courthouse, in Minneapolis, by 11:30 o'clock a.m.

Since Malecha could not satisfy that deadline, as he was not finished with his arrest of the Defendant until approximately 11:30 o'clock a.m., Moran telephoned

- 6 -

Malecha, and instructed him to take the Defendant directly to the Sherburne County Jail.  The Defendant was booked at the Sherburne County Jail at approximately 12:28 o'clock p.m., and Moran drove to the Jail in order to interview him -- an interview that commenced at 4:00 o'clock p.m.   At the commencement of that interview, Moran advised the Defendant of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and the Defendant signed a Waiver of Rights form, which confirmed that he understood his rights, that he was willing to make a statement and answer questions, and that he did not wish to speak to a lawyer at that time.  See, <u>Government's Exhibit 1</u>.  The Government has also introduced a recording of the Defendant's interview with Moran, see, <u>Government's Exhibit 2</u>, and, at the start of the interview, which lasted approximately twenty (20) minutes, the Defendant confirmed that he had been advised of his rights, and that he chose to waive those rights in order to speak with Moran. The audiorecording, however, does not contain a <u>Miranda</u> recitation.

## III.  <u>Discussion</u>

A.     <u>The Defendant's Motion to Dismiss Indictment</u>.  The Defendant argues that the Indictment should be dismissed for the following reasons: a) it is impermissibly vague; b) it is unconstitutional in that Congress holds no authority to regulate the conduct in question; c) it rests upon an impermissible delegation of

authority to the Attorney General, and constitutes a violation of the Administrative Procedures Act; d) it violates the Ex Post Facto clause; and 5) it deprives the Defendant of his right to substantive and procedural Due Process.  We address each contention in turn.

             1.       The Sufficiency of the Indictment.

             a.       Standard of Review.  Rule 12(b), Federal Rules of Criminal Procedure, allows our consideration, at the pretrial stage, of any defense "which is capable of determination without the trial of the general issue."  To withstand a Motion to Dismiss, an Indictment must allege that the defendant performed acts which, if proven, would constitute a violation of the law under which he has been charged.  See, United States v. Polychron, 841 F.2d 833, 834 (8th Cir. 1988), cert. denied, 488 U.S. 851 (1988).  As a result, if the acts, which are alleged in the Indictment, do not constitute a criminal offense, then the Indictment should be dismissed.  See, e.g., United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983), cert. denied, 466 U.S. 973 (1984).

In reviewing the sufficiency of an Indictment, or of any of its Counts, we are to determine whether the Indictment sufficiently sets forth the elements of the offenses alleged, in order to place the defendant on fair notice of the charges against him, and

to enable him to raise an acquittal, or conviction, so as to prevent his double jeopardy for a single offense.  See, Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Hernandez, 299 F.3d 984, 992 (8th Cir. 2002), cert. denied, 537 U.S. 1134 (2003); United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993).

When determining whether an Indictment has sufficiently set forth the elements of the offense charged, the Indictment will generally be deemed sufficient "'unless no reasonable construction can be said to charge the offense.'"  United States v. Morris, 18 F.3d 562, 568 (8th Cir. 1994), quoting United States v. Peterson, 867 F.2d 1110, 1114 (8th Cir. 1989); United States v. Fleming, supra at 1265.  In making that assessment, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true."  United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994), citing United States v. Sampson, 371 U.S. 75, 78-79 (1962); see also, United States v. Barker Steel Co., Inc., 985 F.2d 1123, 1125 (1st Cir. 1993); United States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 (5th Cir. 1978), cert. denied, 437 U.S. 903 (1978).

Ordinarily, the Court's assessment is limited to the "four corners" of the Indictment, and the Court should studiously avoid the consideration of evidence from sources beyond the Indictment.  See, United States v. Hall, supra at 1087.  However,

- 9 -

it is permissible, and even desirable in certain circumstances, for the Court to examine the factual predicates of an Indictment, particularly where material facts are undisputed, in order to ascertain whether the elements of the criminal charge can be shown.  Id.; United States v. Brown, 925 F.2d 1301, 1304 (10th Cir. 1991).

    b. Legal Analysis.  The Indictment contains only one (1) Count, which charges the Defendant with violating Title 18 U.S.C. §2250(a), which provides as follows:

> Whoever –
>
>  (1) is required to register under [SORNA];
>
>    (A) is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law[,] * * * Indian tribal law, or the law of any territory or possession of the United States; or
>
>    (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
>  (2) knowingly fails to register or update a registration as required by [SORNA];
>
> shall be fined under the title or imprisoned not more than 10 years, or both.

Title 18 U.S.C. §2250(a).

- 10 -

According to the Defendant, the Indictment is unconstitutionally vague for, in its one Count, it fails to identify any particular occasion on which he failed to update his registration.

In support of his argument, that we should dismiss the Indictment for vagueness, the Defendant cites Russell v. United States, 369 U.S. 749 (1962).  In Russell, Indictments were brought against several individuals under Title 2 U.S.C. §192, which prohibits witnesses, who are called to testify before Congressional Committees, from refusing to answer any question under inquiry.  Id. at 752 n. 2.  However, the Indictments, which were returned by the Grand Jury, did not identify the subject of the Congressional inquiry, and the Supreme Court found that, because that failing did not allow the Grand Jury to determine if the defendants had violated Section 192, or had exercised, instead, their right, under that statute, to refuse to answer questions that were not pertinent to the matter under inquiry, the Indictments had to be quashed.  Id. at 766.

The Defendant urges us to follow the example of Russell, and to find that the allegation in the Indictment, that he "entered, left and resided in Indian country" between July of 2007, and March 14, 2008, and, during that time period, failed to update his registration as a sex offender, is unconstitutionally vague.  Specifically, the

Defendant claims that, given the discovery that has been produced, the Government may allege that he entered, left, or traveled to or from Indian country, on multiple occasions during that time period, and therefore, he is unable to ascertain which of those alleged multiple violations of the law are the basis for his being charged.

In United States v. Resendiz-Ponce, 549 U.S. 102, 127 S.Ct. 782 (2007), the Supreme Court revisited its holding in Russell, and explained that, while some crimes, such as those prosecuted under Section 192, must be charged with specificity, a finding of guilt under other statutes does not "depen[d] so crucially upon such a specific identification of fact." Id. at 789, quoting Russell v. United States, supra at 764. Moreover, the Court noted that the promulgation of the Federal Rules of Criminal Procedure had removed the need to include detailed allegations in a criminal Indictment, and consequently, in most cases, general allegations in an Indictment satisfy the requirements of Due Process. See, Rule 7(c)(1), Federal Rules of Criminal Procedure (stating that an Indictment "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged"). Id.

The Government disagrees with the Defendant's contention that the Indictment is unconstitutionally vague, and argues that the Defendant's conduct satisfies the elements of Section 2250(a)(2)(A), since he is a sex offender by reason of a conviction

under Federal law, as defined by SORNA, see, <u>Complaint</u>, <u>Docket No. 1</u>, Affidavit of Moran, at ¶7, and that that allegation, alone, provides the Defendant with adequate notice of the crime with which he is being charged.  See, <u>United States v. Templeton</u>, 2007 WL 445481 at *3 (W.D. Okla., February 7, 2007)(holding that an Indictment was sufficient where it "fail[ed] to specify which subsection of SORNA defendant's conviction allegedly meets.").

In the alternative, the Government argues that the Indictment also sufficiently alleges that the Defendant violated Section 2250(a)(2)(B), by knowingly entering and leaving Indian country, without changing his registration, during the period between July of 2007, and March of 2008.  As noted by the Government, in <u>United States v. Ambert</u>, 2007 WL 2949476 at *3 (N.D. Fla., October 10, 2007), the Court was presented with a nearly identical claim of unconstitutional vagueness when the Indictment, on which the defendant was there charged, alleged that he had violated SORNA registration requirements during a six (6) month period.  The Court found that the Indictment, there, was sufficient, as it "properly state[d] the elements of the offense and a time period in which the offense occurred," and therefore, provided the defendant with adequate notice to prepare his defense.  <u>Id.</u>

Moreover, as our Court of Appeals has observed, the use of "on or about in an indictment relieves the government of proving that the crime charged occurred on a specific date, so long as it occurred within a reasonable time of the date specified," United States v. Morris, 18 F.3d 562, 568 (8th Cir. 1994), quoting United States v. Duke, 940 F.2d 1113, 1120 (8th Cir. 1991), and United States v. Turner, 189 F.3d 712, 722 (8th Cir. 1999), and "[t]ime is not a material element of a criminal offense unless made so by the statute creating it." United States v. Youngman, 481 F.3d 1015, 1019 (8th Cir. 2007), citing United States v. Stuckey, 220 F.3d 976, 982 (8th Cir. 2000).

Here, we find that the Indictment states the essential elements of the crime, and specifically charges the Defendant with failing to update his registration, as a sex offender, commencing in July of 2007, despite having a conviction under Federal law, and traveling into and out of Indian Country, during the period from July of 2007, to March 14, 2008, and despite the fact that he had an obligation to do so under both Section 2250(a)(2)(A) and 2250(a)(2)(B).[4] As a consequence, the Defendant has been

---

[4]Although there is a split among the District Courts as to whether a SORNA violation is a continuing offense, see, United States v. Ditomasso, --- F. Supp. 2d ---, 2008 WL 1994866 at *6 n. 5 (D.R.I., May 8, 2008)(listing cases), those Courts that have found that it is not have done so in circumstances where the defendant moved to a jurisdiction, and failed to register prior to the enactment of SORNA, and/or the Attorney General's promulgation of the Interim Order on February 28, 2007. In
(continued...)

placed on notice of the time span during which he is accused of violating SORNA, and presumably, he personally knows any changes in his residence, which occurred during that time span, and can plan his defenses accordingly.[5]   Therefore, we recommend that the Defendant's Motion to Dismiss the Indictment for vagueness be denied.

      2.   <u>Congressional Power to Regulate the Conduct in Question</u>.   The Defendant next alleges that SORNA is unconstitutional, as Congress lacks the power to regulate the conduct in question, since the term "sex offender," as defined in SORNA, includes individuals whose offense has no relationship to interstate commerce, or to Congressional authority regarding the regulation of Indian Country.

---

[4](...continued)
contrast, here, as discussed in further detail in our discussion of the Defendant's <u>Ex Parte</u> Clause claim, the SORNA violation, with which the Defendant is charged, is traveling in interstate commerce after the enactment of both SORNA, and the Interim Order, and therefore, we need not resolve the issue of whether SORNA is a continuing offense.

[5]The Government represents that it has produced discovery to the Defendant which has disclosed that, purportedly, the Defendant submitted an "Address Verification Form" to the Minnesota Bureau of Criminal Apprehension, in which the Defendant reported that he moved to Cass Lake, Minnesota, on July 1, 2007, and did not properly update his registration, under Title 18 U.S.C. §2250(a), through the date of his arrest.   See, <u>Docket No. 49</u>, at pp. 6-7.   While that discovery has not been offered into evidence, it appears to provide the Defendant with a detailed basis upon which to prepare his defense.

In the watershed decision of <u>United States v. Lopez</u>, 514 U.S. 549 (1995), the Supreme Court held that Congress had exceeded its power, under the Commerce Clause, when it enacted the Gun Free School Zones Act of 1990.[6]   The Court identified three categories of activities which are within Congress' power to regulate, including "the use of the channels of interstate commerce;" "the instrumentalities of interstate commerce, or the persons or things in interstate commerce;" as well as those activities which have a "substantial relation to interstate commerce," which required a separate finding that the activity that Congress sought to regulate had a "substantial effect" on interstate commerce.   <u>Id.</u> at 558-59.   "Whether an activity is one that substantially affects interstate commerce is determined by focusing on four factors in particular:  (1) whether the regulated activity is economic in nature; (2) whether the statute contains an express jurisdictional element which limits its application to activities with 'an explicit connection with or effect on interstate commerce;' (3) whether there are congressional findings about the regulated activity's effects on interstate commerce; and (4) whether the connection between the activity and a

---

[6]The Act made it a Federal offense "'for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone.'"  See, <u>United States v. Lopez</u>, 514 U.S. 549, 550 (1995), quoting <u>Title 18 U.S.C. §922(g)(1)(a)</u>(1988 ed. Supp. V).

substantial effect on interstate commerce is attenuated." United States v. Mugan, 441 F.3d 622, 627-28 (8th Cir. 2006), cert. denied, --- U.S. ---, 127 S.Ct. 191 (2006), quoting United States v. Morrison, 529 U.S. 598, 610-13 (2000). In Lopez, the Court determined that the Gun Free School Zones Act "neither regulate[d] a commercial activity nor contain[ed] a requirement that the possession be connected in any way to interstate commerce." Id. at 551; see also, United States v. Morrison, supra, and Jones v. United States, 529 U.S. 848 (2000).

As noted by the Government, every Court to consider the issue of the constitutionality of SORNA under the Commerce Clause -- with two (2) exceptions discussed below -- has found that it is a legitimate exercise of legislative power, under one or both prongs of the Lopez test. See, United States v. Ditomasso, --- F. Supp. 2d ---, 2008 WL 1994866 at *10 n. 8-9 (D.R.I., May 8, 2008)(collecting cases). Here, the Government argues that Section 2250(a) is constitutional pursuant to both the second, and the third prongs, of the Lopez test. See, United States v. Lopez, supra at 558-59.

As to the second prong of the Lopez test, the Government emphasizes that Courts have determined that Section 2250(a) is a valid exercise of legislative power under the Commerce Clause, as "[t]he express language of SORNA dictates that

violations under SORNA, for failing to register, require either that the person is convicted of a violation of a federal law or, if otherwise required to register under SORNA, travel in interstate or foreign commerce."   Government's Omnibus Response, Docket No. 35, quoting United States v. Elliott, 2007 WL 4365599 at *3 (S.D. Fla., December 13, 2007); see also, United States v. Thomas, 534 F. Supp.2d 912, 918 (N.D. Iowa 2008)("Section 2250 falls squarely within the second Lopez category."); United States v. Mason, 510 F. Supp.2d 923, 932 (M.D. Fla. 2007) (holding that Section 2250(a) is facially constitutional "because it falls within the second category set forth in Lopez").  As explained by the Court, in United States v. Gould, 526 F. Supp.2d 538, 547 (D. Md. 2007), "[u]nlike the statutes in Lopez and Morrison, Section 2250(a)(2)(B) focuses on the registration of persons in interstate travel," while the provisions of Section 2250(a)(1)(A) do not raise Commerce Clause concerns, as they require that the defendant have a previous conviction under Federal law.  See also, United States v. David, 2008 WL 2045830 at *8 n. 11 (W.D.N.C., May 12, 2008).

The Defendant argues that we should follow the reasoning of the Court in United States v. Powers, 544 F. Supp.2d 1331, 1336 (M.D. Fla. 2008), which found that Section 2250(a)(2)(B) is not a constitutional exercise of the Commerce Clause,

since it applies to individuals who engaged in interstate travel for legitimate reasons that are not connected with the crime of failing to register as a sex offender,  and such lawful travel did not establish that a subsequent failure to register had a substantial effect on interstate commerce.  Id. at 1335-36.  The position was rejected, however, in a subsequent case from the same District, which found that only a minimal nexus to interstate commerce is required when a statute is analyzed under the second prong of the Lopez test, and that the crime of failing to register as a sex offender was legitimately created to prevent such individuals from disappearing "off the radar screen" by moving across boundary lines to a new jurisdiction, thereby establishing an inherent link to interstate travel.  See, United States v. Mason, 2008 WL 1882255 at *3 (M.D. Fla., April 24, 2008); see also, United States v. Gillette, --- F. Supp.2d ---, 2008 WL 943265 at *5 (D. Virgin Islands, April 7, 2008)(noting that the fact sheet, which was disseminated in conjunction with SORNA, emphasized that "[t]he bill will integrate the information in State sex offender registry systems and ensure that law enforcement has access to the same information across the United States, helping prevent sex offenders from evading detection by moving from State to State."), quoting Fact Sheet: The Adam Walsh Child Protection and Safety Act of 2006, 2006 U.S.C.C.A.N.  S35, *S36 (2006).

The Government argues that Section 2250(a) also satisfies the third prong of the Lopez test, which authorizes Congress to regulate activities that substantially affect interstate commerce.  The Defendant disagrees, and argues that the failure of sex offenders to register is not an economic endeavor that has a substantial effect on interstate commerce, and that Congress failed to include any findings which would support the validity of the Act under the Commerce Clause.  However, in the Supreme Court's most recent decision on the Commerce Clause, Gonzales v. Raich, supra at 21, the Court considered the third prong of the Lopez test, and noted that, "[w]hile congressional findings are certainly helpful in reviewing the substance of a congressional statutory scheme, particularly when the connection to commerce is not self-evident, and while we will consider congressional findings in our analysis when they are available, the absence of particularized findings does not call into question Congress' authority to legislate."

Moreover, several Courts have considered SORNA, under the third Lopez prong, and have found that it was a constitutional exercise of Congressional power.  See, United States v. Holt, 2008 WL 1776495 at *3 (S.D. Iowa, April 18, 2008); United States v. Utesch, 2008 WL 656066 at *14 (E.D. Tenn., March 6, 2008); United States v. Hacker, 2008 WL 312689 at *2 (D. Neb., February 1, 2008); United States

v. Dixon, 2007 WL 4553720 at *5 (N.D. Ind., December 18, 2007).   As the Supreme Court has noted, there is a presumption that SORNA constitutes a legitimate exercise of Congressional power, with the burden on the defendant to make "a plain showing that Congress has exceeded its constitutional bounds," United States v. Morrison, supra at 607, and to support the Act, the Government need only establish a rational basis to conclude that the targeted activity substantially affects interstate commerce. See, Gonzales v. Raich, 545 U.S. 1, 17 (2005).

In United States v. Hacker, supra at *2, the Court found that the purposes of tracking sex offenders, as they move from one jurisdiction to another, and of creating a comprehensive national database of those offenders, constituted a rational basis to conclude that the failure to register in a local jurisdiction substantially affected interstate commerce.  See also, United States v. Ditomasso, supra at *3 ("SORNA, including the criminal component, prevents sex offenders from being lost in the cracks **between** state regulations, a matter which is beyond the power of any one state to comprehensively address.")[emphasis added]; United States v. Howell, 2008 WL 313200 at *8 (N.D. Iowa, February 1, 2008); cf., United States v. Hinen, 487 F. Supp.2d 747, 757-58 (W.D. Va. 2007)("Where a jurisdictional predicate is present in a statute, as is the case here, the 'substantially affects' prong is inapplicable," and the

Government need only make a minimal showing of an effect on interstate commerce); United States v. Thomas, supra at 920 (analyzing SORNA under only the second Lopez prong).

The Defendant argues that, even if Section 2250(a) is constitutional, we should dismiss the Indictment, as a violation of Section 2250(a) requires a demonstration, by the Government, that he violated Section 16913, and that provision constitutes an impermissible exercise of Congressional power.  Although the same argument has been raised, repeatedly, by defendants across the country, only one Court has agreed with the argument, and has held that Section 16913 is unconstitutional.  In United States v. Waybright, — F. Supp.2d ---, 2008 WL 2380946 at *5 (D. Mont., June 11, 2008), the Court held that Section 2250(a) was constitutional under both the first and second prongs of the Lopez test, as it "requires sex offenders to use the channels of interstate commerce or travel in interstate commerce before subjecting them to criminal penalties."  However, the Court then turned to Section 16913,and found that the provision could only be analyzed under the third Lopez prong and, ultimately, failed that test, as SORNA, assertedly, has nothing to do with commerce or economic enterprise, and has no express jurisdictional hook that would "limit its reach to sex offenders connected with or affecting interstate commerce."  Id. at *8.

- 22 -

In United States v. Pitts, 2007 WL 3353423 at *4 (M.D. La., November 7, 2007), reconsideration denied, 2008 WL 474244 (M.D. La., February 14, 2008), the Court noted that Section 16913 did indirectly affect individuals who were convicted under State law, and who did not travel in interstate commerce, as Congress included financial incentives to encourage States to enact their own punitive measures for sex offenders who failed to register.  As a result, the Court determined that this finding supported the Government's claim that SORNA is constitutional, as it highlighted Congressional awareness that the limits of the Commerce Clause prevented SORNA's registration requirements from applying to sex offenders, who were convicted under State law, unless they also traveled in interstate commerce, which prompted the decision to provide incentives for States to pass cooperative legislation.  Id.; see also, United States v. Cardenas, 2007 WL 4245913 at *12 (S.D. Fla., November 29, 2007).

"As a result, the only registration requirements imposed on offenders who do not travel in interstate commerce are those required by state law."  Id.  In fact, Section 16913 does not provide for any criminal prosecution of individual sex offenders, but only establishes that States should establish a criminal penalty for failing to comply with the registration requirements.  See, Title 42 U.S.C. §16913(e)("Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that

includes a maximum term of imprisonment that is greater than 1 year for the failure

of a sex offender to comply with the requirements fo this subchapter.").  However, to

date, no State has enacted SORNA, see, United States v. Waybright, supra at *12, and

therefore, the present Indictment alleges that the Defendant should be subject to

criminal prosecution, either for being a sex offender who was convicted under Federal

law, or for traveling in interstate commerce into and out of Indian Country, or both.

The Defendant is charged with violating Section 2250(a), not Section 16913, and we

find nothing in that prosecution that exceeds Congressional power under the

Commerce Clause.[7]

Finally, the Defendant argues that SORNA presents an unconstitutional burden

on his right to travel.  According to the Defendant, the burdens of registration, which

SORNA imposes on sex offenders, renders compliance a "full-time occupation," as

it criminalizes the failure to register when a sex offender merely visits another State,

or enters or leaves Indian country.  As a hypothetical example, the Defendant claims

---

[7]The Defendant also argues that SORNA is unconstitutional, as Section 16913 clearly provides that Congress has no power to require Indian tribes to adopt the sex offender registration requirements.  See, Title 42 U.S.C. §16913(e).  However, the criminal act, with which the Defendant is charged, arises not from failing to register as a sex offender in Indian Country, but from entering and leaving Indian Country without registering pursuant to Section 16913, and therefore, any tribal registration requirements are irrelevant to this matter.

that an affected individual, who left on a rafting trip down the Minnesota River from Big Stone to New Ulm, "would be forced to register four times," as he first floated into and out of the Upper Sioux Indian Reservation, and again, as he entered and left the Lower Sioux Indian Reservation. Defendant's Memorandum, Docket No. 22, at p. 12.

Although the word "travel" is not contained in the Constitution, "[t]he 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence." Saenz v. Roe, 526 U.S. 489, 498 (1999). The right to travel "protects the right of a citizen to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." Id. at 500; see also, Doe v. Miller, 405 F.3d 700, 713 (8th Cir. 2005), cert. denied, 546 U.S. 1034 (2005). In Weems v. Little Rock Police Department, 453 F.3d 1010, 1016-17 (8th Cir. 2006), cert. denied, --- U.S. ---, 127 S.Ct. 2128 (2007), quoting Doe v. Miller, supra at 713, our Court of Appeals upheld a right to travel challenge to a State sex offender registration statute, and found that the statute did not "prevent a sex offender from entering or leaving any part of the State" or "erect any actual barrier to interstate movement."

Like the State statute challenged in <u>Weems</u>, SORNA does not prevent sex offenders from traveling, but merely requires them to notify law enforcement officials when they do, and it imposes the same registration requirements on individuals who are first moving to a State, as it does on long-time residents.  See, <u>United States v. Waybright</u>, supra at *13.  Moreover, the Courts, which have considered SORNA in this context, have concluded that it does not constitute an unlawful burden on the right to travel.[8]  See, <u>United States v. Ambert</u>, supra at *4, citing <u>Doe v. Moore</u>, 410 F.3d 1337, 1349 (11th Cir. 2006); <u>United States v. Gonzalez</u>, 2007 WL 2298004 at *8 (N.D. Fla., August 9, 2007).  Accordingly, we reject the Defendant's argument that his right to travel has been unlawfully burdened, in support of his Motion to Dismiss.

   3.   <u>Impermissible Delegation of Power to Attorney General</u>.  The Defendant next argues that Congress impermissibly delegated power, to the Attorney General, by which to determine if SORNA applies retroactively to persons who were

---

[8]Although <u>United States v. Ambert</u>, 2007 WL 2949476 at *3 (N.D. Fla., October 10, 2007), and <u>United States v. Gonzalez</u>, 2007 WL 2298004 at *8 (N.D. Fla., August 9, 2007), both rely on a decision by the United States Court of Appeals for the Eleventh Circuit, <u>Doe v. Moore</u>, 410 F.3d 1337, 1349 (11th Cir. 2006), we note that <u>Moore</u> ultimately drew its authority from <u>Saenz v. Roe</u>, 526 U.S. 489, 499-500 (1999), which is the same controlling authority that was cited by our Court of Appeals when addressing this same issue.  See, <u>Weems v. Little Rock Police Department</u>, 453 F.3d 1010, 1016-17 (8th Cir. 2006)

convicted prior to its enactment on July 27, 2006, and that the Regulations, which were promulgated by the Attorney General, violate the Administrative Procedures Act.

Title 42 U.S.C. §16913(d) provides as follows:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

Section 16913(b) provides that a sex offender is required to initially register, either before completing a sentence of imprisonment, or not later than three (3) business days after being sentenced for that offense, if he is not required to serve a prison sentence.  See, Title 42 U.S.C. §16913(b).

"Congress may not constitutionally delegate its legislative power to another branch of Government."  Touby v. United States, 500 U.S. 160, 165 (1991); see also, United States v. Garfinkel, 29 F.3d 451, 457 (8th Cir. 1994).  However, Congress may obtain assistance from other branches and, "[i]n determining what [Congress] may do when seeking assistance from another branch, the extent and character of that assistance must be fixed according to common sense and the inherent necessities of

the government coordination."  United States v. Mistretta, 488 U.S. 361, 371-72

(1989).  As a result, "[s]o long as Congress 'shall lay down by legislative act an

intelligible principle to which the person or body authorized to [exercise the delegated

authority] is to conform, such legislative action is not a forbidden delegation of

legislative power."[9]  Id. at 372.

According to the Defendant, in enacting SORNA, Congress impermissibly gave

the Executive Branch, through the office of the Attorney General, the power to expose

individuals to criminal liability.  However, according to our research, the argument

that Congress unlawfully delegated its power in SORNA has been rejected by every

Court that has considered it.  See, e.g., United States v. Howell, supra at *7 (listing

cases).  In United States v. Howell, supra at *7, the Court found that the authority,

which was granted to the Attorney General in Section 16913(d), "is circumscribed to

a prescribed set of circumstances" that relate to the retroactive applicability of the

registration requirements set out in SORNA.  See also, United States v. Hacker, supra

---

[9]The Supreme Court has only stricken two (2) statutes as being in violation of
the non-delegation doctrine, and both of those instances occurred in 1935.  See,
A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935) and Panama
Refining Co. v. Ryan, 293 U.S. 388 (1935); see also, Whitman v. Am. Trucking
Ass'n, 531 U.S. 457, 474 (2001)(noting this limited application of the non-delegation
doctrine).

at *3; United States v. Samuels, 2008 WL 169792 at *8 (E.D. Ky., January 17, 2008);

United States v. May, 2007 WL 2790388 at *6 (S.D. Iowa, September 24, 2007).

Under the circumstances, here, the only Congressional delegation at issue is that

relating to the authority to issue a rule that covers a narrow circumstance -- when a

person, who is required to register under SORNA, is unable to register in a jurisdiction

where he lives, works, or is a student -- and the "delegation of such authority is not

so broad as to be violative of the non-delegation doctrine." United States v. Hinen,

supra at 751. Congress has clearly set forth the purpose of SORNA, and the fact that

Congress delegated to the Attorney General the authority to determine the

applicability of the Act's registration requirements, before it was implemented in

certain jurisdictions, or granted, to the Attorney General, the power to promulgate

regulations as to certain individuals who would otherwise fall outside of the regulatory

language, is only a gap-filling measure, and does not improperly delegate, to the

Executive Branch, the authority to decide if SORNA applies retroactively. See,

United States v. Mason, supra, 510 F. Supp. 2d at 928.

The Defendant also argues that the Attorney General's Interim Order, which

was codified at Title 28 C.F.R. §72.3, and which provides that "[t]he requirements of

[SORNA] apply to all sex offenders, including sex offenders convicted of the offense

- 29 -

for which registration is required prior to enactment of that Act," was issued in violation of the Administrative Procedures Act ("APA"), see, Title 5 U.S.C. §553, as it was promulgated without a thirty (30) day notice and comment period. The Defendant acknowledges that Section 553 permits agencies to enact rules, without a notice and comment period, for "good cause," where such a delay would be "impractical, unnecessary, or contrary to the public interest." Title 5 U.S.C. §553(b)(B). However, he argues that the "good cause" exception is narrowly construed, and "its use should be limited to emergency situations." Defendant's Memorandum, supra at p. 15, quoting Utility Solid Waste Activities Group v. Environmental Protection Agency, 236 F.3d 749, 754 (D.C. Cir. 2001).

The Government counters that the Attorney General's Interim Order "specified that the rule would become immediately effective because prior public notice would be contrary to the public interest." United States v. Gould, supra at 546. As explained by the Court, in United States v. Pitts, supra at *8, the Interim Order includes findings, by the Department of Justice, which state as follows:

> Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical

dangers include the commission of additional sex assaults and child sex abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to great difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA.  This would thwart the legislative objective of 'protect[ing] the public from sex offenders and offenders against children' by establishing a comprehensive national system for the registration of those offenders,' * * * because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.

The Interim Order concludes that "[i]t would be contrary to the public interest to adopt this rule with a prior notice and comment period * * * or with the delayed effective date normally required."  Id., citing 72 Fed. Reg. 8894, 8896-97 (2007).

We agree with every other Court, which has considered the issue, that the Attorney General has demonstrated that it would be in the public interest to ensure the speedy implementation of the regulations, which relate to the registration requirements of SORNA, and that demonstration satisfied the good cause necessary to waive the notice and comment period.[10]

_____

[10]We do note that the proposed guidelines, which were issued by the Department of Justice, were open to the formal public notice and comment period. See, United States v. Gould, 526 F. Supp.2d 538, 546 (D. Md. 2007).

4.      Applicability of the Ex Post Facto Clause.  The Defendant also argues that the crime, which is alleged in the Indictment, purports to punish him for acts that were committed prior to the passage of SORNA, thereby constituting a violation of the Ex Post Facto Clause.

The Ex Post Facto Clause is violated when a statute is enacted that criminalizes an act that was innocent when originally performed, that increases the punishment for a crime beyond that which would have been imposed at the time of the criminal act, or that removes a defense which would have been available according to the laws that were in force at the time that the act was committed.   See, Collins v. Youngblood, 497 U.S. 37, 42 (1990), citing Beazell v. Ohio, 269 U.S. 167, 169-70 (1925).  As a consequence, the Ex Post Facto Clause applies "to penal statutes which disadvantage the offender affected by them."  Id. at 41; see also, Weaver v. Graham, 450 U.S. 24, 29-30 (1981)("[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."); Snodgrass v. Robinson, 512 F.3d 999, 1002 (8th Cir. 2008)("The changed law must create a 'significant risk' of increasing the offender's punishment."), quoting Garner v. Jones, 529 U.S. 244, 255 (2000).  However, "procedural" changes, which may work

to the disadvantage of the accused, by altering the procedures by which the crime is adjudicated, but which do not change the substantive law, are not Ex Post Facto violations.  Id. at 45.

To determine if a statute is barred by the Ex Post Facto Clause, the Court must ask whether the "legislature's intention was to enact a regulatory scheme that is civil and non-punitive."  Smith v. Doe, 538 U.S. 84, 92 (2003).  The Supreme Court has noted that, if "the intention of the legislature was to enact a regulatory scheme that is civil and non-punitive, [the Court] must further examine whether the statutory scheme is 'so punitive in purpose or effect as to negate [Congress's] intention' to deem it 'civil.'"  Id., quoting Kansas v. Hendricks, 521 U.S. 346, 361 (1997).  To make that determination, the Court "ordinarily defer[s] to the legislature's stated intent," and "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."  Id., quoting Kansas v. Hendricks, supra at 361 and Hudson v. United States, 522 U.S. 93, 100 (1997).

The Government argues that the Defendant's Ex Post Facto claim fails, as the Indictment charges him with failing to register, and to update his sex offender registration, between July of 2007, and March 14, 2008, and that the violation took place after SORNA was enacted on July 27, 2006, and after the promulgation on

February 28, 2007, of the Interim Order by the Attorney General, which made SORNA applicable to individuals whose underlying sex offenses predate SORNA.

The majority of the Courts, which have examined similar claims, have found that, based on the holding of the Supreme Court, in Smith v. Doe, 538 U.S. 84 (2003), SORNA is not an Ex Post Facto law. See, e.g., United States v. Glenn, 2008 WL 2065919 at *1 (W.D. Ark., May 13, 2008)(collecting cases). In Smith v. Doe, supra at 89, the Supreme Court was asked to examine the constitutionality of an Alaskan sex offender registration law, which applied retroactively to offenders who were convicted prior to the passage of that law. The Court began its analysis by examining the language used by the legislature, and then determined that the clear legislative intent was to protect public safety, and that "an imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded.'" Id. at 93, quoting Kansas v. Hendricks, supra at 363.

The Court further noted that, although the notification provisions of the State law were codified in the State's "Health, Safety, and Housing" code, the registration requirements were included in the criminal procedure code, but the Court found that "[t]he location and labels of a statutory provision do not by themselves transform a

civil remedy into a criminal one," as both civil and criminal sanctions could properly be labeled "penalties."  Id. at 94-95.  In addition, the State law did not subject offenders to any type of restraint, other than the registration requirement, which only created a central database for information that was already a matter of public record. Id. at 100-01.  Finally, the Supreme Court rejected the argument that the State registration law was punitive, merely because it applied to all offenders regardless of their future dangerousness, and noted that it had previously approved the "universal application" of such legislation on classes of criminals, without requiring an individualized determination of their dangerousness.  Id. at 104, citing De Veau v. Braisted, 363 U.S. 144, 160 (1960), and Hawker v. People of New York, 170 U.S. 189, 197 (1898).

The Defendant argues that, even if the Act was intended to be civil and non-punitive, SORNA's actual statutory scheme is so punitive that it violates the Ex Post Facto Clause.  The Defendant distinguishes Smith v. Doe, and claims that, unlike the State law in that case, SORNA was clearly intended by Congress to be punitive, as it repealed an earlier statute that made the failure to register as a sex offender a misdemeanor, see, Title 42 U.S.C. §14072(i), and replaced it with Section 2250(a); the violation of which is a felony punishable by up to ten (10) years in prison.  The

Defendant also notes that, unlike the Alaskan law, SORNA was enacted without any Congressional findings that sex offenders have a high recidivism rate, or that public notification would promote public safety.  Finally, the Defendant claims that the crime of failing to register, pursuant to SORNA, is included in Title 18 of the United States Code, which governs criminal acts.

In United States v. Cardenas, supra at *11, the Court considered, and rejected, arguments that were substantively identical to those raised by the Defendant, here, and determined that both the plain language of SORNA, and its legislative history, supported a finding of Congressional intent to enact a nonpunitive regulatory scheme. As explained by the Court in Cardenas, the stated purpose of SORNA is "'to protect the public from sex offenders and offenders against children' and to establish 'a comprehensive national system for the registration of those offenders.'" Id., quoting Title 42 U.S.C. §16901.  Moreover, like the State law in Doe v. Smith, SORNA is entirely codified in Title 42, which governs Public Health and Welfare, with the only exception being the new Federal failure to register crime, which is codified in Title 18, and, as we have previously detailed, the Supreme Court has held that such classifications are not dispositive.

Similarly, the Court, in <u>United States v. Hinen</u>, supra at 755-56, reasoned that, "implicit in the legislative history of [SORNA] is Congress's concern that sex offenders who evaded registration requirements by crossing state lines were a threat to public safety," and that the Congressional intent was to insure that sex offenders complied with the civil registration legislation, which existed in every State at the time of SORNA's passage. The <u>Hinen</u> Court also considered the argument, that the effects of the sex offender registration requirements in SORNA transformed it into a punitive statute, despite the Congressional intent, and relied on the exhaustive analysis in <u>Smith v. Doe</u> to reject that argument.[11] <u>Id.</u> at 756-57; see also, <u>United States v. Mason</u>, supra, 510 F. Supp.2d at 930 (finding that the SORNA provision which requires a sex offender to provide detailed personal information and a photograph did not alter the statute's nonpunitive nature).

Here, SORNA has not criminalized a sex offense that took place prior to its enactment, but rather, has imposed registration requirements on the Defendant, and

---

[11]The Court, in <u>United States v. Hinen</u>, 487 F. Supp. 2d 747, 757 n. 8 (W.D. Va. 2007), concluded that SORNA differs from the State law, which was analyzed by the Supreme Court in <u>Smith v. Doe</u>, 538 U.S. 84 (2003), in that it requires sex offenders to make periodic appearances in order to provide updated photographs, and registration information, and found that those additional requirements were not sufficient to transform SORNA into a punitive statute. See also, <u>United States v. Templeton</u>, 2007 WL 445481 at *5 n. 5 (W.D. Okla., February 7, 2007).

all others similarly situated, which became retroactively effective by the Attorney General's Interim Order, and the Defendant is charged with violating those requirements after both SORNA was enacted, and the Interim Order was promulgated. As a result, this case is distinguishable from those cases in which Courts have found that the Ex Post Facto Clause was violated, which are limited to circumstances in which the offender failed to register after the passage of SORNA, but prior to the date of the Interim Order.  See, e.g., United States v. Gillette, supra at *8 (finding that SORNA was ex post facto as to the defendant whose failure to register as a sex offender predated both the passage of SORNA, and the promulgation of the Interim Order); United States v. Aldrich, 2008 WL 427483 at *5 (D. Neb., February 14, 2008); United States v. Kent, 2008 WL 360624 at *10 (S.D. Ala., February 8, 2008); United States v. Muzio, 2007 WL 2159462 at *5 (E.D. Mo., July 26, 2007)(holding that SORNA "is only unconstitutional when applied to those previously-convicted persons who traveled before the Attorney General's Rule").  For these reasons, we find that SORNA is not ex post facto as to the Defendant.

   5. Substantive and Procedural Due Process Claims.  Finally, the Defendant argues that SORNA violates his right to substantive and procedural Due Process.  Specifically, the Defendant claims that SORNA does not provide a

mechanism by which he can have a Hearing, before being required to register, at which he would have the opportunity to challenge the registration or designation process.  In addition, the Defendant claims that he did not receive any notice of SORNA, or its requirements, and that, even if he had known about those requirements, he could not have complied with them, as SORNA has not been implemented by Minnesota.  We address each argument in turn.

The Defendant's first argument is that SORNA violates his right to both procedural and substantive Due Process, by failing to provide for a Hearing, or a petition process, prior to publishing the names of registered sex offenders on Internet registries, and because he can be deprived of his liberty if he fails to comply with the reporting and registration requirements set forth in the Act.  In effect, the Defendant argues that SORNA imposes "automatic sex offender status," without a Hearing to address the risk of recidivism, or the current dangerousness of the affected individual, and that, since SORNA is a punitive measure, that failing implicates Due Process concerns.

The Government responds that the Defendant has no Due Process right to a Hearing in order to assess his danger of recidivism or risk to the public, and underscores that the Supreme Court "has expressly held that not offering a sex

offender a hearing to determine his current dangerousness prior to his name being

published in a sex offender registry is not a violation of procedural due process."

United States v. Templeton, 2007 WL 445481 at *5 (W.D. Okla., February 7, 2007),

citing Connecticut Dept. of Public Safety v. Doe, 538 U.S. 1, 4-8 (2003); see also,

United States v. Mason, supra, 510 F. Supp. 2d at 930.   SORNA defines a "sex

offender" as "an individual who was convicted of a sex offense," Title 42 U.S.C.

§16911(1), and an offender is placed in one of three tiers, based upon the nature of his

past conduct, and not on an assessment of his current level of dangerousness or his

risk of recidivism.  See, Title 42 U.S.C. §16911(2)-(4).  As a consequence, a Hearing

on those issues would not be material to the SORNA registration requirements, and

we find that the Defendant has failed to state a procedural Due Process claim.[12]

Next, the Defendant argues that he did not receive notice of the SORNA

registration requirements, and that Section 2250(a)(3) requires that he **knowingly** fail

_____

[12]Moreover, our Court of Appeals has found that requiring a sex offender to register does not give rise to a procedural Due Process claim, as "[d]amage to reputation alone * * * is not sufficient to invoke the procedural protections of the due process clause," and the burdens imposed by requiring a sex offender to supply fingerprints, a photograph, and information concerning his whereabouts, and to update that information, are not sufficient to give rise to a constitutional claim. See, Gunderson v. Hvass, 339 F.3d 639, 644 (8th Cir. 2003), cert. denied, 540 U.S. 1124 (2004).

"to register or update a registration as required by SORNA" in order to violate the statute.  The Defendant does acknowledge that he was convicted, in 2001, for Sexual Abuse of a Minor, and was sentenced to a term of twenty-four (24) months in custody, and three (3) years of supervised release, and that, following his release from custody, he registered as a convicted sex offender, and acknowledged his duty to register "in accordance with Minnesota Statute Section 243.166."  Defendant's Memorandum, supra at p. 2, citing Complaint, Docket No. 1, Affidavit of Moran, at ¶¶7-9.  However, he claims that he should not be subject to prosecution under Section 2250(a), as he was never specifically advised of his need to register under SORNA.  Many Courts have been presented with, and have rejected, the same argument. See, United States v. Holt, supra at *2 (collecting cases).

Although Title 42 U.S.C. §16917 provides that the Government has an obligation to inform a sex offender, who is subject to SORNA, of the reporting and registration requirements, either before he is released from custody, or immediately after his sentencing for the offense giving rise to the duty to register, the Court, in United States v. Holt, supra, noted that the Government did not contend that the defendant ever received such notice, but found that knowledge of the need to register, and the successful completion of registration under State law, provided sufficient

notice that, if he changed his residence, he was required to register as a sex offender in that new jurisdiction.  Id.; see also, United States v. Ditomasso, supra at *3-4 ("[Both the structure and purpose of [SORNA] show that Congress intended for sex offenders to register in their states regardless of whether a state has fully implemented SORNA.").

Minnesota Statutes Section 243.166, Subdivision 3, provides that, "at least five days before [a sex offender] starts living at a new primary address, including living in another state, the person shall give written notice of the new primary address to the assigned corrections agent or to the law enforcement authority with which the person currently is registered * * * [and] if the person will be living in a new state and that state has a registration requirement, the person shall also give written notice of the new address to the designated registration agency in the new state."  In addition, Section 243.166, Subdivision 3a, provides that, if a sex offender who is required to register lacks a permanent primary address, he is required to register with an appropriate law enforcement agency, in the jurisdiction where he is staying, within twenty-four (24) hours from the time when he ceases to have a primary address, and to report, in person, to a law enforcement agency on a weekly basis, for as long as he lacks a primary address.

The Defendant suggests that the Supreme Court's holding, in <u>Lambert v.</u> <u>California</u>, 355 U.S. 225 (1958), supports his claim, that an individual's Due Process rights are violated when he is prosecuted for "wholly passive" conduct, such as failing to register.  In <u>Lambert</u>, supra at 227, the Supreme Court struck down a city ordinance that required persons, who had been convicted of a felony, to register with the police within five (5) days after arriving in the city.  In finding that the ordinance violated the right to Due Process, the Supreme Court stated that the ordinance did not include an element of wilfulness, and provided for criminal charges based entirely on the passive presence of the individual within the city limits.  The Court held that, in order for the ordinance to be constitutional, it would have to require a showing of  "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply."  <u>Id.</u> at 227-30.

In <u>United States v. Hutzell</u>, 217 F.3d 966, 968 (8th Cir. 2000), cert. denied, 532 U.S. 944 (2001), our Court of Appeals determined that <u>Lambert</u> "carves out a very limited exception to the general rule that ignorance of the law is no excuse," and emphasized that the holding of <u>Lambert</u> is that a prosecution is not a Due Process violation if the defendant's lack of awareness of the need to engage in statutorily mandated behavior, or to refrain from statutorily barred behavior, is objectively

unreasonable.  In a recent well-reasoned decision, <u>United States v. Craft</u>, 2008 WL 1882904 (D. Neb., April 23, 2008), the Court considered the applicability of <u>Lambert</u> to a defendant's claim, that the SORNA registration requirements violated his right to Due Process, and found that, although SORNA criminalizes the same "wholly passive" conduct of failing to register which also was at issue in <u>Lambert</u>, prosecutions pursuant to Section 2250(a) did not violate Due Process, as long as the sex offender had received prior notice that he was required to register as a State offender, was warned that failure to register would constitute a crime under State law, and had demonstrated his ability to comply with those State registration requirements.

Other Courts, which have considered the applicability of <u>Lambert</u> in the context of SORNA, have agreed, and have found that a convicted sex offender, who has been advised of his obligation to register as a sex offender under State law, has received sufficient notice to be subject to prosecution, without giving rise to a Due Process

violation.[13]  See, <u>United States v. Glenn</u>, supra at *2; <u>United States v. Waybright</u>, supra at *16-17; <u>United States v. Hinen</u>, supra at 754.

Finally, the Defendant argues that the Attorney General failed to promulgate regulations that would make SORNA retroactive to persons who were convicted before its implementation in a particular State, and that, since Minnesota has not implemented SORNA, prosecuting him for violating its registration requirements is a violation of Due Process.  The Defendant additionally claims that, as Minnesota has not yet implemented SORNA, he is unable to register in a way that would satisfy the statutory requirements.

In <u>United States v. Utesch</u>, supra at *5, the Court considered a sex offender's argument, that he was not required to register under SORNA, as the Attorney General had not adopted a rule or regulation that makes the Act retroactively applicable to persons who were convicted prior to SORNA's implementation in a particular State.

---

[13]Although we have found two (2) Courts, which have held that prosecutions under SORNA have violated Due Process, in both cases the defendant failed to register prior to either the enactment of SORNA, or the promulgation of the Attorney General's Interim Order, and therefore, they are distinguishable, as we have already determined that the Defendant's Ex Post Facto Clause claims are without merit.  See, <u>United States v. Barnes</u>, 2007 WL 2119895 (S.D.N.Y., July 23, 2007); <u>United States v. Smith</u>, 2007 WL 1725329 (S.D.W.Va., June 13, 2007); see also, <u>United States v. Lovejoy</u>, 516 F. Supp.2d 1032, 1036 (D. N. Dak. 2007)(discussing cases); <u>United States v. LeTourneau</u>, 534 F. Supp. 2d 718, 723 (S.D. Tex. 2008)(same).

However, as the Court explained, the Attorney General has, in fact, issued regulations "to interpret and implement" SORNA, as required by Title 42 U.S.C. §16912, by promulgating Title 28 C.F.R. §72, which "explicitly provided that SORNA applies to sex offenders convicted of any predicate offense before enactment of SORNA." Id.

Moreover, Title 42 U.S.C. §16913(d) instills the Attorney General with the authority to "specify the applicability of the requirements of this subsection to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section," and Section 16913(b) provides guidelines for the initial registration of sex offenders. As a result, Section 16913(d) only applies to offenders who had not previously registered, prior to SORNA's promulgation.[14] See, United States v. Gould, supra at 542-43; United States v. DiTomasso, supra at *5. Furthermore, SORNA requires that a sex offender "register, and keep the registration current, in each

---

[14]Further, in May of 2007, the Attorney General issued Proposed Guidelines which specified that "the applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program," but applies to all sex offenders, including those individuals whose convictions predate the implementation of SORNA. Id., citing 72 Fed. Reg. 30210, 30212.

jurisdiction where the offender resides, * * * is an employee, and * * * is a student,"
Title 42 U.S.C. §16913(a), and Title 42 U.S.C. §16911(9) defines "sex offender
registry" as "a registry of sex offenders, and a notification program, maintained by a
jurisdiction." Therefore, even without the promulgation of Guidelines by the Attorney
General, a sex offender satisfies the SORNA registration requirements by meeting the
registration requirement guidelines that have been established by each State, including
Minnesota.

The Defendant also objects that SORNA's registration requirements are more
extensive than the extant State sex offender registration requirements, and the
software for distributing information, which is collected under SORNA, and which
is referred to in Title 42 U.S.C. §16923, has not yet been created. However, the Court,
in United States v. Waybright, supra at *16, considered and rejected that argument,
and determined that the defendant, there, was not "being prosecuted for providing less
information to [the State] * * * than SORNA requires," but was facing criminal
charges "for failing to register at all after moving to [the State]." See also, United
States v. Utesch, supra at *5; United States v. Gould, supra at 542; United States v.
Craft, supra at *7. As the Defendant has conceded, that he was advised of the
requirement that he register as a sex offender in Minnesota, and that he did complete

that initial registration, we are unable to find that it is violation of Due Process to prosecute him for failing to maintain that registration.

In sum, having considered, and rejected, the Defendant's constitutional claims, we recommend the denial of his Motion to Dismiss his Indictment.

    B.    <u>The Defendant's Motion to Suppress Statements, Admissions and Answers</u>.

    1.    <u>Standard of Review</u>.  Government agents are not required to administer Miranda warnings to everyone whom they question.  See, <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977).  Rather, <u>Miranda</u> warnings are required for official interrogations where a person has been "'taken into custody or otherwise deprived of his freedom of action in any significant way.'"  <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994), quoting <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966); <u>United States v. Helmel</u>, 769 F.2d 1306, 1320 (8th Cir. 1985); <u>Berkemer v. McCarty</u>, 468 U.S. 420, 428-29 (1984).

Whether or not <u>Miranda</u> is implicated, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination.  See, <u>Dickerson v. United States</u>, 530 U.S. 428, 433-34 (2000).  For a confession to be considered

voluntary, a Court must examine "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession."  Dickerson v. United States, supra at 434, citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

As the Supreme Court has explained:

> The due process test takes into consideration "the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation." [Schneckloth v. Bustamonte, 412 U.S. at 226.]  See also Haynes [v. Washington, 373 U.S. 503, 513] (1963); Gallegos v. Colorado, [370 U.S. 49, 55] (1962); Reck v. Pate, [367 U.S. 433, 440] (1961) ("[A]ll the circumstances attendant upon the confession must be taken into account"); Malinski v. New York, [324 U.S. 401, 404] (1945) ("If all the attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant").  The determination "depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." Stein v. New York, [346 U.S. 156, 185] (1953).

Id. at 434.

Among the circumstances, which are to be considered in this analysis are, first and foremost, whether a Miranda warning has been given, see, Withrow v. Williams, 507 U.S. 680, 693 (1993); any elements of "police coercion," see, Colorado v. Connelly, 479 U.S. 157, 167 (1986); the length of the interrogation, see, Ashcraft v. Tennessee, 322 U.S. 143, 153-154 (1944); the location of the interrogation, see, Reck v. Pate, 367

U.S. 433, 441 (1961); and the continuous nature of the interrogation, see, <u>Leyra v. Denno</u>, 347 U.S. 556, 561 (1954).  See also, <u>Withrow v. Williams</u>, supra at 693 (listing the applicable considerations).

In addition, Rule 5(a), Federal Rules of Criminal Procedure, requires that a defendant's initial appearance occur without "unnecessary delay," and Title 18 U.S.C. §3501(c) provides as follows:

> In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: **Provided**, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable

considering the means of transportation and the distance to
be traveled to the nearest available such magistrate judge or
other officer.

[Emphasis in original].

Although creating a "safe harbor" for confessions, which were made by a suspect

within six (6) hours after his arrest, Rule 5, and Section 3501, do not, <u>per se</u>,

invalidate statements which have been provided after the six (6) hour deadline.

As our Court of Appeals stated, in <u>United States v. Bear Killer</u>, 534 F.2d 1253,

1256-57 (8th Cir. 1976), cert. denied, 429 U.S. 846 (1976):

In United States v. Keeble, 459 F.2d 757 (8th Cir. 1972),
rev'd on other grounds, 412 U.S. 205, 93 S.Ct. 1993, 36
L.Ed.2d 844 (1973), we held that the critical inquiry into
the admissibility of in-custody statements is whether, in the
light of all the circumstances, they were voluntary.  The
delay between arrest and confession is a factor that must be
considered in this inquiry.  But a delay alone will not
render a confession inadmissible.  Notwithstanding the
urgings of the appellant, we continue to adhere to Keeble.
* * * In so doing, we repeat the Supreme Court's admoni-
tion that the simple fact of custody is coercive.  It is a subtle
form of pressure that plays against the will of a suspect, the
effects of which are most difficult to measure.
Accordingly, the reasons for delay must be carefully
scrutinized.  A statement given while in custody is not
admissible if it is the product of an improper encroachment
on the right to an initial appearance before a magistrate.

See also, <u>United States v. Van Lufkins</u>, 676 F.2d 1189, 1193 (8th Cir. 1982); <u>United
States v. Keeble</u>, 459 F.2d 757, 761-62 (8th Cir. 1972), rev'd on other grounds, 412

U.S. 205 (1973); <u>Grooms v. United States</u>, 429 F.2d 839, 842-43 (8th Cir. 1970); <u>United States v. Smith</u>, 713 F. Supp. 1315, 1317 (D. Minn. 1989).

As a consequence, "[d]elay between arrest and presentment is only one of five factors a trial judge must consider when determining whether a confession was voluntary, see 18 U.S.C. §3501(b), but delay is not dispositive * * *."  <u>United States v. Pugh</u>, 25 F.3d 669, 675 (8th Cir. 1994).

Accordingly, in assessing the admissibility of a confession made after an arrest, we look to the following factors:

> (1)    the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment,
>
> (2)    whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession,
>
> (3)    whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him,
>
> (4)    whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel, and
>
> (5)    whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

<u>Title 18 U.S.C. §3501(b)</u>.

- 52 -

In making this assessment, no one factor is conclusive, although "voluntariness, rather than delay, is the key factor." United States v. Van Lufkins, supra at 1193, citing 1968 U.S. Code Cong. & Admin. News at 2127, 2167.

   2. Legal Analysis. The Defendant urges that any statements, which he made during his interview by Moran on March 26, 2008, should be suppressed, as he was not afforded an initial appearance, before a Magistrate Judge, on the day of his arrest, and the approximately twenty-seven (27) hour delay, between the time of his arrest, and the time at which he was brought before a Judicial Officer, was unlawful. See, Defendant's Post-Hearing Memorandum, Docket No. 46, at p. 6.   The Government counters that we should deny the Defendant's Motion to Suppress, as his statement to law enforcement officers was voluntary, occurred within six (6) hours of his arrest, and that any delay, in bringing him before a Judicial Officer, was reasonable.

  As an initial matter, from his submissions to the Court, it appears that the Defendant may also argue that he was not properly advised of his Miranda rights. See, Defendant's Post-Hearing Memorandum, supra at p. 6.   The Government acknowledges that the Defendant was in official custody at the time of his interview, and that, therefore, the law enforcement officers had an obligation to provide a

<u>Miranda</u> warning before questioning the Defendant.  However, at the Hearing, Moran

testified that, at the commencement of the interview, he advised the Defendant of his

rights, and the Defendant concedes that he was presented with a Waiver of Rights

Form, that additionally advised him of his rights under <u>Miranda</u>, and that he

acknowledged his understanding of those rights, and waived them, in writing.[15]  See,

<u>Government's Exhibit No. 1</u>.

Moreover, we have independently reviewed a copy of the audiorecording of that

interview, and find that there is no hint in this Record, however slight, that the

Defendant was impaired by alcohol or drugs, and Moran's testimony, that the

Defendant responded appropriately to the questions asked of him, is also corroborated

by the audiotape.  The Defendant claims no physical or mental impairments, which

would have made him more susceptible to an unwitting waiver of his rights and, on

this Record, we find none.  In addition, at no time during the interview did the

---

[15]Although the Defendant argues that the audiorecording of the interview does
not include any oral advisement of his rights, he has not submitted any competent
evidence that would refute the Government's evidence concerning his advisement of
his <u>Miranda</u> rights, and the mere failure to record an oral statement of a waiver does
not give rise to suppressible error, when there is unrefuted evidence of a valid written
waiver.  See, <u>United States v. Saenz</u>, 474 F.3d 1132, 1132 (8th Cir. 2007)("Consent
can be given orally or in writing."), citing <u>United States v. Siwek</u>, 453 F.3d 1079,
1084 (8th Cir. 2006).

Defendant request the interrogation to stop, nor did he ever request the presence of an attorney.  There is no evidence that the milieu of the interrogation was oppressive, relentless, debasing, or brutish, and the tone throughout is relaxed and conversational.

The Defendant also argues that Moran did not inform him that he had been charged with any crime, which related to the questions that he was being asked. While knowledge of the nature of the offense at the time of questioning is a factor that we consider when evaluating the voluntariness of a statement made by an individual to law enforcement officers, the audiorecording discloses that Moran informed the Defendant that he was being questioned because the Bureau of Criminal Apprehension listed him as a non-compliant sex offender.  See, Government's Exhibit No. 2.

Furthermore, we find nothing to suggest that the Defendant's Miranda waiver was the product of coercion, or of an overborne will.  The interview, insofar as it related to the charges before us, was relatively short, the Defendant was not denied any amenity that he requested, and the tone of the questioning was conversational, and consistently low-key.  Of course, we are mindful, that the "interrogation of a suspect will involve some pressure because its purpose is to elicit a confession." United States v. Martin, 369 F.3d 1046, 1055 (8th Cir. 2004), quoting United States v. Astello, 241 F.3d 965, 967 (8th Cir. 2001).  Here, however, the commonly used stratagems -- "a

raised voice, deception, or a sympathetic attitude on the part of the interrogator," id. at 1055, quoting United States v. Astello, supra at 967 -- were not employed and, even if they had been, our Court of Appeals has recognized that such approaches "will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne.'" Id., quoting United States v. Astello, supra at 967, quoting, in turn, Jenner v. Smith, 982 F.2d 329, 334 (8th Cir. 1993). Here, we find no responsible basis to conclude that the Defendant's will was overborne by anything that Moran said, or did.

Next, the Defendant argues that, even if he was properly advised of his Miranda rights, his statements should be suppressed since he was not brought before a Judicial Officer before his interview with law enforcement. The parties disagree about whether the interview with the Defendant took place within six (6) hours after his arrest on March 26, 2008, such that it would fall within the safe harbor established by Section 3501(c). The Defendant argues that, according to the testimony of Goodshield, he was arrested on March 26, 2008, at his mother's house, shortly after 10:00 o'clock a.m. However, at the Hearing, Goodshield stated that she could not be certain of the exact time at which the police officers arrived, although she was certain that it took place at some time after 9:40 o'clock a.m., and before 11:00 o'clock a.m.

In contrast, Moran testified that he first called Malecha, in order to advise him of the Defendant's whereabouts, between 10:00 o'clock a.m., and 10:30 o'clock a.m., and that Malecha arrived on the scene at approximately 11:00 o'clock a.m., and arrested the Defendant shortly thereafter.  In addition, the Defendant argues that, although the Waiver of Rights Form, which was signed by the Defendant, is marked "4:00 p.m.," the audiorecording of his interview concluded at 4:37 o'clock p.m., and the recording itself is approximately eighteen (18) minutes long.  As a result, based upon his computations, the Defendant concludes that the interview could not have been initiated until 4:19 o'clock p.m., and therefore, was nineteen (19) minutes after the six (6) hour safe harbor.

Although it appears that there is an open question concerning the exact time of the Defendant's arrest, as well as his interview, we find that, even if more than six (6) hours had elapsed, before Moran initiated his questioning of the Defendant, that delay was not unreasonable.  At the Hearing, Moran testified that the Defendant was not brought before a Magistrate Judge on the day of his arrest, because a Warrant Clerk in his office telephoned the United States District Court, and was told that there was insufficient time for the Defendant to be seen by Pretrial Services, prior to the Initial Appearances that were scheduled for that day, and the United States Marshal Service

has a policy that, if a Pretrial Services interview is not available prior to an Initial

Appearance, then the arrestee will be booked into custody until such an interview is

available.

Although the Defendant argues that the Government has not introduced

evidence that such a policy exists, Moran testified that this was the accepted practice

of the United States Marshal Service and, absent any evidence that would impeach his

sworn testimony, we accept it as accurate.   Our Court of Appeals has held that an

overnight delay is neither excessive nor unreasonable.   See, United States v.

Hernandez, supra at 748-49 (finding that a fifteen (15) hour delay was reasonable),

citing United States v. Boyer, 574 F.2d 951, 955 (8th Cir. 1978)(no violation for a

twenty (20) hour delay); see also, County of Riverside v. McLaughlin,  500 U.S. 44,

56 (1991)("[J]udicial determinations of probable cause within 48 hours of arrest will,

as a general matter, comply with the promptness requirement of [Gerstein v. Pugh,

420 U.S. 103 (1975].")

Further, we find that, even if the interview took place outside the six (6) hour

safe harbor, and even if the delay was unreasonable, the Defendant's statement to

Moran is admissible.   In support of his claim, that unreasonable delay alone

constitutes sufficient grounds to suppress his statement, the Defendant cites United

States v. Perez, 733 F.2d 1026, 1031 (2nd Cir. 1984), in which the Court found that, in cases where a confession took place more than six (6) hours after an arrest, Section 3501 permits -- although does not require -- suppression based exclusively on that delay. However, Perez is not controlling here[16] and, as previously noted, our Court of Appeals has found that unreasonable delay is only one factor to be considered, in weighing the voluntariness of a statement, see, United States v. Keeble, supra at 761, and Section 3501 does not make a confession, which was obtained after six (6) hours of the arrest, automatically inadmissible, but instead, serves to prohibit the exclusion of statements that were made within the safe harbor period based on unreasonable delay. See, United States v. Van Lufkins, supra at 1193.

As we have already found, the Defendant was properly advised of his Miranda rights, and of the charges against him, prior to his interview, and he expressly waived the assistance of counsel, after being advised of those rights. Moreover, we have found that his will was not overborne, and that he made his statements without any undue coercion. Therefore, finding no evidence in the Record to the contrary, we find

---

[16]The interpretation of Section 3501, which was employed by the Court in United States v. Perez, 733 F.2d 1026, 1031 (2nd Cir. 1984), has been rejected by several other Courts. See, United States v. Corley, 500 F.3d 210, 217-18 (3rd Cir. 2007); United States v. Christopher, 956 F.2d 536, 539 (6th Cir. 1991).

that his statements were voluntary, and the Defendant's Motion to Suppress those statements should be denied.

      C.    <u>The Defendant's Motion to Suppress Evidence Derived from Searches and Seizures</u>.

      As to the Defendant's Motion to Suppress Evidence Derived from Searches and Seizures, the Government represents that no evidence was seized from the Defendant, and the Defendant does not challenge that representation. Therefore, we recommend that the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be denied as moot.

      NOW, THEREFORE, It  is --

RECOMMENDED:

1.      That the Defendant's Motion to Dismiss Indictment [Docket No. 21] be denied.

2.      That the Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 28] be denied.

3.      That the Defendant's Motion to Suppress Evidence Derived from Searches and Seizures [Docket No. 27] be denied, as moot.

Dated:  July 8, 2008                      s/Raymond L. Erickson
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 25, 2008**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to

comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 25, 2008**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.